551 So.2d 736 (1989)
Manuel PITCHER
v.
HYDRO-KEM SERVICES, INC. and Hartford Insurance Company.
No. CA890339.
Court of Appeal of Louisiana, First Circuit.
October 11, 1989.
Writ Denied December 1, 1989.
Charles R. Moore, Baton Rouge, for plaintiff-appellee, Manuel Pitcher.
Terri A. Maderson and Robert Hoover, Baton Rouge, for defendants-appellants, Hydro-Kem Services, Inc. and Hartford Ins. Co.
Before EDWARDS, LANIER and FOIL, JJ.
FOIL, Judge.
In this suit for worker's compensation benefits, we are asked to review the trial court's ruling that plaintiff is entitled to benefits as well as penalties and attorney's *737 fees for prosecuting this claim. After a thorough review of the record, we affirm and increase the award for attorney's fees.

FACTS
Plaintiff, Manuel Pitcher, was injured on November 4, 1987, while constructing a shed over an acid storage tank facility for defendant, Hydro-Kem Services, Inc. (Hydro-Kem). He sought worker's compensation benefits from Hydro-Kem and its insurer, Hartford Insurance Company. Defendants denied benefits on the basis that Mr. Pitcher was not an employee of Hydro-Kem, but rather was an independent contractor who was not performing part of Hydro-Kem's "trade, business or occupation" at the time of his injury. Mr. Pitcher brought his claim before the Office of Worker's Compensation, which found he was entitled to benefits, penalties and attorney's fees. Defendants refused to pay benefits, and this lawsuit followed.
The record shows that Hydro-Kem is an industrial service company, which provides, among other things, high pressure water and chemical cleaning. Al Dampier is the owner and general manager of Hydro-Kem. On a number of occasions since 1984, Mr. Dampier contacted Mr. Pitcher to perform various carpentry services at either of Hydro-Kem's two Baton Rouge locations. Mr. Pitcher testified that he first worked for Hydro-Kem in 1984 at its Highland Road location, for approximately nine months, performing carpentry services. The record shows that Mr. Pitcher also worked for Hydro-Kem in February, 1985. Mr. Pitcher was again contacted by Mr. Dampier in 1986, and was hired by him to subdivide a metal building into a warehouse and an office. Mr. Dampier testified that Mr. Pitcher also constructed lockers and built shelving at the Hydro-Kem facility. Mr. Pitcher stated that he worked approximately eight months on these projects.
With respect to the accident in question, Mr. Pitcher was contacted by Mr. Dampier to construct an acid storage tank facility at Hydro-Kem's Perkins Road location. Mr. Pitcher was not asked to submit a bid for the job, and was paid an hourly wage of $12.50. As was the normal procedure throughout his relationship with Hydro-Kem, Mr. Pitcher was given plans and told to determine what materials would be necessary to complete the job. The materials were then ordered and paid for by Hydro-Kem.
Mr. Pitcher began construction on the facility in October, 1987. He testified that Mr. Overton Thibodeaux, Hydro-Kem's operations manager, delivered the specifications to him, and told him where to put the facility. During the first phase of the project, Mr. Pitcher constructed a cement sump to house the acid storage tank. He was assisted by Hydro-Kem's employees, who also did the required plumbing. When the services of another carpenter became necessary, Mr. Pitcher requested that Mr. Dampier hire another carpenter to assist him, who did so. Mr. Pitcher stated that Mr. Thibodeaux supervised his work on the project, and had him make changes as the construction progressed.
Following the installation of the storage tank by Hydro-Kem's employees, Mr. Pitcher returned to the site to construct a shed over the facility. Mr. Dampier explained that it was essential to keep rain water out of the tank, and there were only two methods of doing so: a pump system, or an enclosing structure. Mr. Thibodeaux instructed Mr. Pitcher as to what type of roof to put over the structure. While working on the roof, Mr. Pitcher fell and fractured his arm, hip and pelvic bone. At the time of his injury, a Hydro-Kem employee was assisting him in the construction of the shed.
On each of the jobs that Mr. Pitcher worked on for Hydro-Kem since 1984, he was paid an hourly wage and was never asked to submit a bid. Mr. Pitcher testified that he worked a 40 hour work week, from 7:30 a.m. to 3:30 p.m. daily, kept a record of his hours and was paid weekly, by check. The checks were drawn from Hydro-Kem's general account, and Hydro-Kem did not withhold income taxes from his checks, although it did so with respect to all of its other employees, whose checks *738 were issued from its payroll account. The checks issued to Mr. Pitcher were coded "casual labor".
Mr. Dampier testified that he did not dispute that everyone working on the acid storage tank project (with the exception of Mr. Pitcher) was a Hydro-Kem employee. He also testified that Mr. Pitcher set his own hours, was not supervised by him, gave him an estimated date of completion for the project, and was basically given freedom to control the work once he had the specifications.
At the conclusion of the evidence, the trial court ruled that Mr. Pitcher was the employee of Hydro-Kem at the time of the accident, and was therefore entitled to compensation benefits. It also ordered defendants to pay penalties and attorney's fees. Defendants perfected this appeal, challenging the coverage ruling and the assessment of penalties and attorney's fees. Plaintiff answered the appeal, seeking an increase in the award for attorney's fees to reflect work performed in this appeal.

EMPLOYEE STATUS
The primary issue in this appeal centers on Mr. Pitcher's status at the time of the injury. In challenging the trial court's status ruling, defendants argue that the evidence established that at the time of his injury, Mr. Pitcher was not Hydro-Kem's employee, but was an independent contractor. They contend, however, that he is not entitled to benefits because he was not performing part of Hydro-Kem's "trade, business or occupation" at the time of the accident. Plaintiff, on the other hand, suggests the evidence supports the status ruling, and alternatively argues that even if he is found to be an "independent contractor", he is entitled to benefits because he was performing part of the "trade, business or occupation" of Hydro-Kem.
In order to determine, for workers' compensation purposes, whether the relationship between a worker and a company is that of an employee or an independent contractor, each case must be decided on its own facts, taking into consideration the total economic relationship between the parties. The inquiry hinges on a principal test: "the right to control" the work. It is the right of control that is the essence of the employment relationship. On the other hand, the term "independent contractor" connotes a freedom of action and choice with respect to the undertaking in question as well as a legal responsibility on the part of the contractor in the event the agreement is not fulfilled in accord with its covenants. La.R.S. 23:1021(6); Fuller v. United States Aircraft Insurance Group, 530 So.2d 1282 (La.App. 2d Cir.), writ denied, 534 So.2d 444, 445 (La.1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1954, 104 L.Ed.2d 424 (1989); Prince v. Baton Rouge General Hospital, 449 So.2d 90 (La.App. 1st Cir.), writ denied, 450 So.2d 966 (La.1984).
In attempting to resolve a status issue, this court looks primarily at four factors, including:
1. Selection and engagement;
2. Payment of wages;
3. Power of dismissal; and
4. Control
See Prince, 449 So.2d at 92. Within each category, there are a number of factors which may be taken into account, weighing either in favor of employee status or independent contractor status. We shall analyze the evidence as it bears on each of these factors, in determining whether the trial court committed manifest error in ruling that Mr. Pitcher was Hydro-Kem's employee.
(1) Selection and engagement
The evidence showed that on a number of occasions, including the one at issue, Hydro-Kem's president contacted Mr. Pitcher to provide carpentry services on its behalf. Mr. Dampier testified, however, that on at least one occasion, Mr. Pitcher approaced him and looked for work. We find that the evidence shows that the ultimate power of selection and engagement rested with Hydro-Kem, thus, a factor weighing in favor of employee status.
*739 (2) Payment of wages
The evidence showed that Mr. Pitcher was paid an hourly wage throughout his relationship with Hydro-Kem, including the job in question, and was never paid on a completed project basis. Despite Mr. Dampier's insistence that Mr. Pitcher gave him an estimated date for completion, the evidence showed he was paid an hourly wage, and payment on a time basis, rather than on a completed project basis, is a strong indication of employee status. Fuller, 530 So.2d at 1290.
The manner in which the worker is carried on the payroll of the employee is also a factor to be taken into consideration. Here, Mr. Pitcher was paid out of Hydro-Kem's general account, rather than its payroll account. Income taxes were not withheld by Hydro-Kem from Mr. Pitcher's paychecks, although they were withheld from the other employee's paychecks. The failure to withhold income taxes, would not, standing alone, defeat employee status, but is a factor weighing in favor of independent contractor status. Fuller, 530 So.2d at 1290-1291.
(3) The power of dismissal
This factor looks at whether the work undertaken can be discontinued or terminated by either party without a corresponding liability for its breach. The right to terminate a worker's services at will is indicative of control on the principal's part.
The evidence showed that there was no written contract between the parties fixing their respective rights in the event the project would be discontinued or terminated. Mr. Dampier testified that he felt he had the right to fire Mr. Pitcher, although, he stated that he felt he had the right to fire anyone, whether employee or contractor. The testimony on this factor was, as one may expect, equivocal.
(4) Control
It is the right of the employer to control the work which is the linchpin of the employer-employee relationship. One factor indicative of this type of control is supervision over the work by the principal. The evidence on this factor was somewhat conflicting. Mr. Pitcher testified he was supervised during construction by Hydro-Kem's operations manager, who gave him specifications, told him where to put the structure, and had him make changes as the construction progressed. Mr. Dampier testified, however, that Mr. Pitcher was not supervised and was basically left to his own devices once he was given the specifications. Accepting Mr. Pitcher's testimony, the evidence supports a finding that Mr. Pitcher was supervised by Hydro-Kem in the performance of his job, thus another factor weighing in favor of an employment relationship.
Another indicia of control looks to the source of materials and equipment to be used by the worker. When the principal provides the equipment and supplies to perform the job, the relationship is usually one of employment. Fuller, 530 So.2d at 1291. In this case, Mr. Pitcher furnished a hammer, square rule and scaffold. However, Hydro-Kem furnished all of the supplies for the project.
The right of the worker, whether exercised or not, to hire helpers and assistants, is also a factor to be considered in assessing the worker's status. Fuller, 530 So.2d at 1291. The evidence showed that when Mr. Pitcher was in need of another carpenter's assistance in constructing the concrete sump, he went to Hydro-Kem officials to request that they hire someone to help him, and Hydro-Kem did so. This factor, along with the fact that he was being paid an hourly wage, suggests Mr. Pitcher could not have independently hired assistance on the job, and weighs in favor of employee status.
Another factor bearing on the status issue focuses on whether the worker is performing services that are an integral part of the principal's business, or whether the worker was performing work independent of the principal's business. Independent contractor status presupposes that the contractor's work is of a nature separate and independent from the principal's business. Fuller, 530 So.2d at 1291.
As Mr. Dampier admitted at trial, Hydro-Kem's employees were intricately involved *740 in overall construction of the acid storage tank facility, including, among other things, installing the tank and assisting Mr. Pitcher in the construction of the shed. Mr. Dampier stated that Hydro-Kem's employees were utilized on the project because of their special knowledge in dealing with acids. The storage of acids no doubt is an integral part of a business engaged in environmental/chemical cleaning. The construction of the facility to house the acid, especially in light of the fact that Hydro-Kem's own employees assisted in that effort, strongly indicates that Mr. Pitcher's work was not separate and independent from Hydro-Kem's business, thus weighing in favor of employee status.
Courts have also looked at whether the worker performs work for one principal on a continuing and exclusive basis, which suggests economic dependence on the principal and thus evidences employee status. Here, although Mr. Pitcher did not work exclusively for Hydro-Kem, he did work for Hydro-Kem on numerous projects throughout the three year period prior to his injury, for extended periods of time, thus suggesting his economic dependence on Hydro-Kem.
Considering the evidence as a whole, we note that the strongest factor weighing against employee status is the method in which Mr. Pitcher was carried on Hydro-Kem's payroll. We conclude, however, that, given the numerous indicia of employee status in this case, as well as the presumption of employee status in La.R.S. 23:1044, the trial court correctly struck the balance in favor of employee status. We affirm its ruling that Mr. Pitcher is entitled to worker's compensation benefits for his injuries.

PENALTIES AND ATTORNEY'S FEES
La.R.S. 23:1201.2 permits a claimant to recover penalties and attorney's fees when compensation benefits have been denied arbitrarily, capriciously, or without probable cause. The claimant is not entitled to such a recovery where there exists a rational basis for an employer and its insurer to decline to pay benefits. Connor v. Frees Construction Company, Inc., 525 So.2d 241 (La.App. 1st Cir.), writ denied, 532 So.2d 111 (La.1988).
Defendants challenge the trial court's award of penalties and attorney's fees, contending they were justified in refusing to pay benefits to Mr. Pitcher because they considered him to be an independent contractor who was outside the scope of the protection of the worker's compensation scheme, relying on Lushute v. Diesi, 354 So.2d 179 (La.1977). Whether the refusal to pay benefits warrants the imposition of penalties and attorney's fees is a factual question which we will not disturb in the absence of manifest error. Cooper v. AMI, Inc., 454 So.2d 156 (La. App. 1st Cir.), writ denied, 459 So.2d 539 (La.1984).
We note that the Office of Worker's Compensation reviewed this claim and found Mr. Pitcher was entitled to benefits, penalties and attorney's fees. Given the considerable evidence favoring employee status in this case, which was within the knowledge of defendants, we find no manifest error in the trial court's award of penalties and attorney's fees.
The trial court awarded Mr. Pitcher $2,750.00 for attorney's fees. Mr. Pitcher answered this appeal, seeking an increase in the award to reflect work performed by his attorney on this appeal. An increase in attorney's fees is usually awarded when the defendant appeals and obtains no relief, when the appeal has necessitated additional work on the part of plaintiff's counsel, provided that plaintiff has requested the increase in accordance with proper appellate procedure. Burgess v. City of Baton Rouge, 477 So.2d 143 (La.App. 1st Cir. 1985); Achord v. H.E. Weise Construction Company, 422 So.2d 1248 (La.App. 1st Cir. 1982). Here, plaintiff properly requested an increase in a timely filed answer in this court. Plaintiff's attorney filed a brief in defense of the judgment of the lower court, and participated in oral argument before this court. Under the circumstances of this case, we find that an additional amount of $1,200.00 is warranted.

*741 CONCLUSION
The judgment of the trial court is affirmed. The plaintiff is awarded an additional attorney fee from Hartford Insurance Company of $1,200.00 for this appeal, with legal interest thereon from the date of this judgment until paid. The appellants are cast for the cost of this appeal.
AMENDED AND AFFIRMED.