646 So.2d 961 (1994)
Vernon ALFORD
v.
ENVIRONMENTAL MONITORING, et al.
No. 93 CA 0985.
Court of Appeal of Louisiana, First Circuit.
October 7, 1994.
Rehearing Denied January 18, 1995.
*962 M. Reggie Simmons, Franklinton, for plaintiff-appellee, Vernon E. Alford.
G. Patrick Burvant, T.A., New Orleans, for defendant-appellant, Environmental Monitoring & Testing Co. and CNA Ins.
Before CRAIN, FOIL and WHIPPLE, JJ.
CRAIN, Judge.
Defendants, Environmental Monitoring and Testing (Environmental) and their insurer, CNA Insurance (CNA) appeal[1] from a judgment of the Office of Workers' Compensation Administration which found plaintiff entitled to compensation benefits, statutory penalties and attorney's fees resulting from the acute development of work-related bilateral carpal tunnel syndrome. La.R.S. 23:1031.1; 23:1201; 23:1201.2. We affirm in part and reverse in part.
*963 On appeal, defendants first contend that the hearing officer erred in concluding that plaintiff presented an overwhelming preponderance of evidence and thereby overcame the statutory presumption that an occupational disease contracted within twelve months of employment is not job-related. La.R.S. 23:1031.1(D).
A hearing officer's factual findings regarding whether a worker's compensation claimant has met the burden of proving disability is entitled to great weight and will not be overturned, absent manifest error. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277 (La.1993). This is the case, even if the decision is based solely upon written records, reports and depositions. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992).
In determining whether such a finding is manifestly erroneous, we are guided by the language in Stobart v. State Through Department of Transportation and Development, 617 So.2d 880 at 882-883 (La. 1993):
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong.' This court has announced a two-part test for the reversal of a factfinder's determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.
* * *
Nonetheless, this Court has emphasized that `the reviewing court must always keep in mind that "if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."' (Citations Deleted)
We have reviewed the entire record, including the lay testimony, medical deposition, reports and exhibits, and we conclude the hearing officer's finding that the plaintiff presented an overwhelming preponderance of evidence that his condition of bilateral carpal tunnel syndrome was a job-related occupational disease, is supported by the record. Consequently, plaintiff overcame the statutory presumption. The hearing officer's reasons for judgment more fully illustrate the rational basis for these findings. We approve those reasons as our own, and attach them to this opinion.
Defendants next argue that the trial court erred in finding the compensation carrier responsible for penalties and attorney fees for its "arbitrary and capricious" refusal to pay compensation benefits. La.R.S. 23:1201; 23:1201.2. Defendants contend that the refusal to pay benefits was justified because the disease occurred four weeks into the job with Environmental, Dr. Richard Naef's report indicated he did not believe the disease was job-related, and it was defendant's belief that plaintiff had not presented "an overwhelming preponderance of evidence" that this occupational disease was contracted during the course of employment.
The hearing officer found that CNA could no longer rely solely on Dr. Naef's report when the plaintiff presented overwhelming evidence of his diagnosis by three physicians and the surgical results which indicated that plaintiff's condition of bilateral carpal tunnel syndrome was related to his job activities with the defendant, Environmental. See: Tassin v. Cigna Insurance Company, 583 So.2d 1222 (La.App. 3rd Cir. 1991); Aguillard v. Industrial Const. Co., Inc., 542 So.2d 774 (La.App. 3rd Cir.1989). Whether the refusal to pay worker's compensation benefits warrants imposition of penalties *964 and attorney's fees is a factual question which will not be disturbed in the absence of manifest error. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736 (La.App. 1st Cir.), writ denied, 553 So.2d 466 (La.1989). We cannot say that the finding that CNA's refusal was "arbitrary and capricious", is clearly wrong. Stobart, supra.
Finally, defendants allege that the hearing officer erred in awarding an additional sum in attorney fees to plaintiff in the event he is successful on appeal.
It is not uncommon for there to be an increase in the award of attorney fees for the additional time incurred by an attorney in defending a carrier's unsuccessful appeal. Pitcher, 551 So.2d 736; Aguillard, 542 So.2d 777. However, the vehicle for such an increase is by way of an answer to the appeal and the fee is set by the appellate court. Pitcher, 553 So.2d 740.
In this case the hearing officer awarded a sum of $2,000 in the event of an appeal in which plaintiff prevailed. We have reviewed the award and we find merit in defendant's last assignment of error, inasmuch as plaintiff did not timely answer the appeal to request an increase in the award of attorney fees. The award by the trial court of $2,000.00 for attorney fees in the event of appeal is hereby reversed.
For the reasons assigned the judgment of the hearing officer is affirmed in part and reversed in part. Defendant shall bear the costs of this appeal.
AFFIRMED-IN-PART AND REVERSED IN-PART.

APPENDIX

DOCKET # 91-09338

DISTRICT "6"

OFFICE OF WORKERS' COMPENSATION ADMINISTRATION STATE OF LOUISIANA

Vernon E. Alford

Versus

Environmental Monitoring and Testing and CNA Insurance

REASONS FOR JUDGMENT
This matter came on for trial October 14, 1992, pursuant to previous assignment. The Court finds that Vernon E. Alford was employed by Environmental Monitoring and Testing Corporation from June 8, 1991, through August 3, 1991, and that CNA Insurance Company provided workers' compensation insurance coverage at all times pertinent in this matter.
The Court further finds that Vernon E. Alford was working in the course and scope of his employment with Environmental Monitoring and Testing Corporation on or about July 23, 1991, when he sustained an "acute" development of bilateral carpal tunnel syndrome at the PPG site in Lake Charles, Louisiana. Mr. Alford first consulted with Dr. William H. Durham by telephone in late July. After August 3, 1991, Dr. Durham referred Mr. Alford to a neurologist, Dr. R.W. Naef. Dr. Naef consulted, but did not examine Mr. Alford on August 8, 1991. At that time, Dr. Naef's impression was, "He is developing traumatic neuritis of the median nerve at the carpal tunnels." Dr. Randle testified in deposition (transcript page 13) that, "... the median nerve, which is the nerve that produces the symptoms of carpal tunnel syndrome, runs through eh portion of thebetween the bones and the arm at the level of the wrist called carpal tunnel, that is why it's called carpal tunnel syndrome."
The Court finds that after seeing Dr. Naef on August 8, 1991, Vernon Alford attempted to obtain an amicable resolution of his claim by writing a letter to Mr. Dave Malchow of Environmental Monitoring on August 13, 1991. In that letter, Mr. Alford sent a copy of Dr. Naef's report and diagnosis, along with the excused absence Mr. Alford had received from Dr. Durham, who Mr. Alford accurately declared "concurs with Dr. Knife's opinion" of carpal tunnel syndrome.
The deposition of Dr. Durham clearly indicates that Dr. Durham regularly treats patients with carpal tunnel syndrome, seeing approximately fifteen (15) patients a year with this disease (Durham transcript page 47). Because Dr. Durham had believed Mr. Alford had contracted carpal tunnel syndrome, *965 he had referred Mr. Alford to Dr. Knife on August 8, 1991. Dr. Knife not having done any physical examination or nerve conduction studies, and Mr. Alford desiring to have a second opinion, Dr. Durham next referred Mr. Alford to a second neurologist, Dr. Gerald P. Randle, who had the capability of performing a nerve conduction study. Dr. Randle saw plaintiff on August 29, 1991, and later performed a nerve conduction study on October 2, 1991, which revealed a positive result for bilateral carpal tunnel syndrome.
On August 29, 1991, Dr. Randle wrote a letter to Dr. Durham, in which Dr. Randle states, "It certainly appears that he [Vernon Alford] has bilateral carpal tunnel syndrome which may well be related to his occupation." Dr. Randle then suggested that Dr. Durham conduct some routine blood work and tests to rule out any underlying collagen vascular disorders or metabolic problems, such as thyroid, diabetes, rheumatoid arthritis, and lupus. The tests revealed that no such disorders or metabolic problems were found in this claimant.
Dr. Randle further states in his letter of August 29, 1991, "I would suspect that there is no amount of rest that will enable him to return to the job he performs right now unless he should have surgery." The nerve conduction study of October 2, 1991, provides objective and conclusive confirmation of the development of bilateral carpal tunnel syndrome in this claimant.
By August 29, 1991, plaintiff had, at his own expense, seen three doctors due to his symptoms of carpal tunnel syndrome, all three doctors diagnosing him with carpal tunnel syndrome.
Nevertheless, on October 2, 1991, CNA Insurance Company denied coverage for this claim, informing Mr. Alford by letter that, "Your claim is not compensable under the state laws. Therefore, we must respectfully deny your claim for workers' compensation benefits under Louisiana law. Any medical received will be forwarded to you for filing with your group." And CNA later refused to re-revaluate its position of denial of the claim, apparently basing their denial solely on the contention that plaintiff could not prove that his development of carpal tunnel syndrome was caused by his employment with Environmental Monitoring and Testing Corporation.
The only other physician to see Vernon Alford after October 2, 1991, was Dr. McWillie Robinson, a surgeon who saw Mr. Alford for the first time on October 14, 1991, in response to a referral by Dr. Gerald Randle for pre-operative evaluation. Dr. Robinson's name and address were provided to defendants in the Form 1008 filed in October, 1991, by plaintiff.
The deposition of Dr. Robinson verifies that he, as well as Dr. Randle and Dr. Durham, had all concluded that Vernon Alford had sustained bilateral carpal tunnel syndrome as a result of his employment with Environmental Monitoring. In his trial deposition, Dr. Robinson clarified the difference between "classic development" and "acute development" of carpal tunnel syndrome, clearly indicating that Vernon Alford had never had any anatomical predisposition towards a non-work related development of carpal tunnel syndrome, but that Mr. Alford had indeed developed an acute case of bilateral carpal tunnel syndrome as a result of the labor he performed on or about July 23, 1991, when he tugged on the quarter-inch steel cable to raise and drop the "down-hole" hammer. Both Dr. Randle and Dr. Robinson opined that a single event may cause carpal tunnel syndrome to develop in a person. The Court finds the events of July 23, 1991, caused the development of bilateral carpal tunnel syndrome in Mr. Alford.
Mr. Alford filed a Form 1008 on October 28, 1991, in which he clearly named and listed all physicians who had seen him, including Dr. McWillie Robinson, who later performed surgery on May 15, 1992. Defendants were not unaware of these doctors' findings.
In Paragraph 48 of Form 1008, Mr. Alford clearly explained the nature of the dispute between him and his employer, further placing the employer on notice that his illness was work related. At that point in time, Mr. Alford pursued his claim without the assistance *966 of legal counsel. He did not incur the expense of an attorney until after the surgery on May 15, 1992. The record reflects that Mr. Alford's attorney did not appear in these proceedings until June, 1992, some eleven months after Mr. Alford had reported his occupational disease to his employer.
The Court observes that the surgical decompression conducted by Dr. McWillie Robinson on May 15, 1992, confirmed all the preoperative diagnoses of bilateral carpal tunnel syndrome. Dr. Robinson found no anatomical predisposition for carpal tunnel syndrome, and the operation was completely successful in relieving all symptoms of bilateral carpal tunnel syndrome in this plaintiff. These facts, too, were known to defendants in this case long before trial.
The Court finds as credible and worthy of belief the testimonies of Drs. Durham, Randle and Robinson that plaintiff's development of bilateral carpal tunnel syndrome was directly caused by his employment with Environmental Monitoring and Testing Corporation. The Court specifically finds that plaintiff has sustained his burden of proof by an overwhelming preponderance of evidence that this disease was work related as per La.R.S. 23:1031.1.
The Court further finds that plaintiff was temporarily totally disabled from August 4, 1991, through June 23, 1992, when Dr. Robinson released him to return to work. La.R.S. 23:1221(1). During that time period, plaintiff was unable to shave, write with a pen, drive an automobile, play golf, and do many other mundane chores without difficulty and pain. In addition, defendants utterly failed to admit evidence of the availability of light duty employment for plaintiff, or the wages plaintiff might have been able to earn. Tassin Vs. Cigna Insurance Company, 583 So.2d 1223 [1222] (3rd Cir.1991); Cassard Vs. American General Fire and Casualty, 568 So.2d 1151 (5th Cir.1990); Cousins Vs. City of New Orleans, 580 So.2d 536 (4th Cir.1991).
The law is clear that an employer and its insured is not justified in relying on an earlier, optimistic medical report indicating a non-job related illness in a claimant. The letter of the claimant to Environmental Monitoring on August 13, 1991, clearly indicated Dr. Durham's concurrence with Dr. Knife's opinion of the development of bilateral carpal tunnel syndrome, and additional information pertaining to Dr. Randle's August 29, 1991, concurrence and opinions could have easily been obtained by the insurer, had it desired to do so. In Cormier Vs. Save Time, 497 So.2d 404 (3rd Cir.1986), The Third Circuit Court of Appeal stated,
"Where subsequent to an initial optimistic report, an employer receives information indisputably showing a claimant to be disabled, the employer cannot rely upon the early report and solely on its basis, avoid penalties and attorney's fees for arbitrary nonpayment of compensation benefits indisputably due the disabled claimant."
This case was followed in Tassin Vs. Cigna Insurance Company, Supra.
The Court finds that CNA acted arbitrarily, and without probable cause, in denying plaintiff's claim. Not only did CNA reject the claim in October, 1991, after plaintiff had seen three doctors who had all diagnosed carpal tunnel syndrome, but it continued its rejection even after learning of the success of the surgical decompression of the median nerves in Mr. Alford's wrists in May, 1992. In addition, a pre-trial conference was held in chambers before this Court on June 19, 1992, in which the medical evidence was thoroughly discussed between counsel for both sides. Nor did the unequivocal trial depositions of Drs. Durham, Randle and Robinson persuade CNA to change its position of denial.
It is, therefore, fitting and appropriate that defendants pay the statutory penalties and plaintiff's attorney's fees, as provided by law. La.R.S. 23:1201; 1201.2.
Accordingly, the Court renders judgment in favor of plaintiff for the following itemized particulars, to wit:

*967
1. Weekly workers' compensation benefits $13,254.00
2. Medical, medicine and travel expenses 3,340.81
3. Statutory penalty (12%) 1,991.38
4. Stenographer's fees for Drs. depositions 730.65
5. Doctors' depositions 975.00
6. Attorney's fees 6,500.00
7. Legal interest from 10/23/91 until paid
8. All costs of Court.

Stenographer fees of Seven Hundred Thirty and 65/100 ($730.65) Dollars and the fees of plaintiff's physicians for depositions of Nine Hundred Seventy-Five and 00/100 ($975.00) Dollars, totalling One Thousand Seven Hundred Five and 65/100 ($1,705.65) Dollars are assessed as costs of Court.
The Court further rules that in the event of an appeal of this matter, and a successful affirmation in favor of plaintiff, an additional sum of Two Thousand and 00/100 ($2,000.00) Dollars in attorney's fees shall be awarded for the services of plaintiff's attorney, in connection with the appeal.
THUS DONE AND SIGNED IN CHAMBERS at Franklinton, Louisiana this 16th day of October, 1992.
 /s/ Robert W. Varnado, Jr.
 Robert W. Varnado, Jr.
 JUDGEDISTRICT "6"
NOTES
[1] Plaintiff attempted to answer the appeal in order to seek an increase in the amount of attorney fees awarded. This Court denied plaintiff's motion as untimely. La.C.C.P. Art. 2133. Alford v. Environmental Monitoring and Testing and CNA Insurance, 93 CA 0985 (La.App. 1st Cir. April 6, 1994).