671 So.2d 370 (1995)
William Daniel HAMMONS
v.
ABB C-E SERVICES, INC. and Transportation Insurance Company.
No. 94 CA 2444.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
*372 J. Arthur Smith, III, Baton Rouge, for Plaintiff-Appellee William D. Hammons.
Kirk L. Landry, Baton Rouge, for Defendants-Appellants ABB C-E Services, Inc. and Transportation Insurance Co.
Before LOTTINGER, C.J., WATKINS, SHORTESS, CARTER, LeBLANC, FOIL, GONZALES, WHIPPLE, FOGG, PITCHER, PARRO, FITZSIMMONS, KUHN, JJ., and REDMANN[1] and TANNER[2], JJ. Pro Tem.
FOGG, Judge.
In this worker's compensation action, ABB C-E Services, Inc., and Transportation Insurance Company appeal the award of compensation, interest, and penalties and attorney's fees to William D. Hammons, the plaintiff.
The parties stipulated that the plaintiff injured his left knee in the course and scope of his employment on October 31, 1990. The plaintiff, a 63 year old boilermaker, underwent arthroscopic surgery on the left knee on February 15, 1991. By September, 1992, the treating orthopedic surgeon declared the plaintiff a candidate for total knee arthroplasty with restrictions of no prolonged sitting or standing; by October, 1992, the plaintiff had developed right knee pain and swelling with x-rays indicating collapse with bone-on-bone contact of the medial component.
The defendants initially paid the plaintiff temporary total disability benefits, and then supplemental earnings benefits (SEB) at the maximum rate from September 30, 1991, until December 9, 1991. At that time, they reduced the SEB and then, on August 4, 1993, terminated it. The plaintiff filed this worker's compensation claim on November 18, 1993, and trial was held on April 14, 1994.
The hearing officer awarded the plaintiff SEB from August 27, 1991, until April 14, 1994, in the amount of $1212.60 per month with legal interest from the date of judicial demand until paid; permanent total disability benefits from the date of trial, April 14, 1994, in the amount of $1481.66 per month with legal interest from the date of judicial demand until paid; penalties of $2000.00 and attorney's fees of $1500.00; and costs, including expert witness fees of $500.00 for Dr. Stephen Speeg and $600.00 for Mr. Curtis Charrier.
On appeal, the defendants contend that the hearing officer erred in finding that the plaintiff was permanently totally disabled; in calculating the amount of SEB; in determining the rate of compensation payable to the plaintiff for permanent total disability; in determining the interest owed to the plaintiff; in ruling that the defendants were *373 arbitrary and capricious; and in finding them responsible for costs and experts' fees and in determining the amounts of those fees. The plaintiff answered the appeal seeking an increase in the award of attorney's fees.
Regarding their contention that the hearing officer erred in determining that the plaintiff was totally permanently disabled, the defendants claim that the plaintiff's various other health problems rendered him unable to work as opposed to his knee injury. In her reasons for judgment, the hearing officer detailed the plaintiff's many health problems, and observed that because he had been regularly working as a boilermaker with most of those problems, the plaintiff would "still be working had he not injured his knee." The hearing officer continued,
[T]he accident literally took his legs out from under him. Once this was [sic] occurred, this man with a 3rd grade education and years of boilermaking expertise, began to spiral. His depression worsened, he developed the lumbar facet disease, his arthritis accelerated, and he generally deteriorated to the point where he cannot work at all.
The hearing officer concluded that due to losing the strength of his left and then his right knee, the plaintiff was unable to work, and that the condition of his knees, together with his "horrible general medical condition," constituted permanent total disability.
A pre-existing disease or infirmity of the employee does not disqualify a claim if a work-related injury aggravates, accelerates, or combines with the pre-existing disease or infirmity to produce disability. Toth v. Ensco Environmental Services, Inc., 546 So.2d 188 (La.App. 1st Cir.), writ granted in part on other grounds, reversed in part on other grounds, 551 So.2d 623 (La.), writ denied, 551 So.2d 632 (La.1989). A hearing officer's factual findings regarding whether a worker's compensation claimant has met the burden of proving disability are entitled to great weight and will not be overturned, absent manifest error. Alford v. Environmental Monitoring, 93-0985 (La.App. 1st Cir. 10/7/94), 646 So.2d 961. The factfinder's determinations as to whether an employee's testimony is credible and whether an employee has discharged his burden of proof are factual findings. Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992). When findings are based on a credibility determination, a hearing officer's decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). We have thoroughly reviewed the record, including the lay testimony, medical testimony, reports and exhibits, and we conclude that the hearing officer's finding that the plaintiff was permanently totally disabled at the time of the hearing is not manifestly erroneous.
The defendants contend that the permanent total disability benefits awarded the plaintiff exceed the maximum rate of compensation permissible under the Louisiana Worker's Compensation Law. Under LSA-R.S. 23:1202(A)(2), the maximum weekly compensation to be paid is 75 percent of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law. The statute further provides,
B. [T]he average weekly wage in all employment subject to the Louisiana Employment Security Law shall be determined by the administrator of the office of employment security on or before August 1 of each year as of the quarter ending on the immediately preceding March 31 of each year. The average weekly wage so determined shall be applicable for the full period during which compensation is payable when the date of occurrence of injury falls within the twelve-month period commencing September 1 following the determination.
According to the Louisiana Register (Vol. 16, No. 8, August 20, 1990), of which we are authorized to take judicial notice under LSA-R.S. 49:966(C), the state's average weekly wage paid in all employment subject to the Employment Security Law effective September 1, 1990 was $376.02, making the maximum weekly compensation $282.00. At the hearing, the parties stipulated that the plaintiff's average weekly wage at the time of the injury was $516.86. Permanent total disability benefits are sixty-six and two-thirds percent of the plaintiff's average weekly wage, *374 which in this case would be $344.23. Therefore, because sixty-six and two thirds percent of the plaintiff's average weekly wage is greater than the maximum compensation, the maximum compensation the plaintiff can receive for total permanent disability is $282.00 per week. We note that the plaintiff's contention that the parties did not stipulate to the maximum rate payable for permanent total benefits is meritless because the maximum rate for temporary total disability (which the parties stipulated was at the maximum rate of $282.00 per week) and permanent total disability would be the same. Additionally, while the hearing officer made a monthly award, there is no statutory provision for a monthly award of permanent total disability benefits. Cf. LSA-R.S. 23:1221(3)(a). We therefore will amend the judgment to award the plaintiff $282.00 weekly for permanent total disability benefits.
The defendants contend that the plaintiff was not entitled to SEB as awarded by the hearing officer because the hearing officer did not base her computation on the two jobs the defendants claimed were available to the plaintiff. The plaintiff is entitled to SEB if the injury has resulted in the employee's inability to earn wages equal to ninety percent or more of wages at the time of injury. LSA-R.S. 23:1221(3)(a). The injured employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733. Once the employee's burden is met, the burden of proof then shifts to the employer, who, if it wishes to contend that the employee is earning less than he is able to earn so as to defeat or reduce SEB, bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. LSA-R.S. 23:1221(3)(c)(i).
The hearing officer determined that the two jobs the defendant found for the plaintiff were "obviously unavailable"; yet, she noted that the plaintiff did seek one of the jobs which had already been filled when he applied. As to the second job as a donut cutter, the plaintiff's treating orthopedic surgeon had conditionally approved the job with the restriction of "no prolonged standing"; the plaintiff testified that he learned that the job required heavy lifting and constant standing when he looked into it. We have reviewed the testimony and evidence and the hearing officer's conclusion that the jobs offered were not available to the plaintiff is not manifestly wrong.
The defendants also contend that the hearing officer erred in awarding SEB for the period from August 27, 1991, through April 14, 1994, because the plaintiff applied for retirement benefits in August, 1993, and began receiving them shortly afterwards. Under LSA-R.S. 23:1221(3)(d)(iii), the right to SEB terminates "[w]hen the employee retires or begins to receive old age insurance benefits under Title II of the Social Security Act, whichever comes first; however, the period during which supplemental earnings benefits may be payable shall not be less than one hundred four weeks."
The plaintiff called an adjuster for the defendant insurer and asked her about the effect of his acceptance of retirement benefits on his worker's compensation benefits. After discussing the matter with her supervisor, the adjuster informed the plaintiff that his acceptance of retirement benefits "would not in any way alter your workers [sic] compensation benefits." At the plaintiff's request, she sent him a letter on October 11, 1991, which also said this. The plaintiff was not represented by counsel when he made the inquiry; based on the adjuster's representations, he applied for retirement benefits. He testified that if he had not been given this advice, he would not have applied for the retirement pension because he "couldn't afford to, because I was getting more money there [worker's compensation benefits] than I get from my pension."
The hearing officer found that the defendant insurer misled the claimant and that because the insurer's representative wrote the letter and gave this advice to the plaintiff, *375 it was liable for penalties and attorney's fees for its termination of the plaintiff's SEB. Moreover, by awarding SEB from August 27, 1991, until April 14, 1994, the hearing officer did not apply LSA-R.S. 23:1221(3)(d)(iii) to terminate the SEB based on the plaintiff's receipt of retirement benefits. We agree with the hearing officer's decision not to apply the termination provision under the particular circumstances of this case. The plaintiff justifiably relied on the representation of the defendant's adjuster and accepted retirement benefits to his detriment; therefore, the defendants are estopped from using the plaintiff's receipt of retirement benefits as a basis to terminate his SEB. See Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975). An analogous jurisprudential rule is that an employer who lulls an injured employee into a false sense of security may not later interpose a plea of prescription to the worker's untimely suit for compensation benefits. Wesley v. Claiborne Electric Co-op., Inc., 446 So.2d 857 (La.App. 2d Cir.), writ denied, 450 So.2d 955 (La.1984). The defendants' contention that they terminated the SEB due to the plaintiff's retirement, not due to his acceptance of retirement benefits, is purely semantics. The defendants' assignment of error regarding the amount of SEB awarded has no merit.
The defendants contend that the hearing officer erred in finding them responsible for penalties and attorney's fees under LSA-R.S. 23:1201.2 for their arbitrary and capricious refusal to pay compensation benefits. Whether the refusal to pay worker's compensation benefits warrants the imposition of penalties and attorney's fees is a factual question which will not be disturbed in the absence of manifest error. Alford, 646 So.2d at 964. We find no error in the hearing officer's imposition of penalties and attorney's fees based upon the defendants' termination of SEB because the plaintiff was receiving retirement benefits.
The defendants contend that the hearing officer erroneously awarded legal interest from the date of judicial demand until paid. LSA-R.S. 23:1201.3(A) states, in pertinent part, "Any compensation awarded and all payments thereof directed to be made by order of the hearing officer shall bear judicial interest from the date ordered paid by the hearing officer until the date of satisfaction." According to two other circuits, this statute replaces the jurisprudential rule that pre-judgment interest on worker's compensation benefits is awarded from the dates the payments are due until they are paid. Verret v. Cajun Travel, Inc., 94-1432 (La.App. 3d Cir. 4/5/95), 653 So.2d 777; Crooks v. Town of Ball, 94-466 (La.App. 3d Cir. 11/2/94), 649 So.2d 597; Brazley v. Burger King/CIGNA, 613 So.2d 739 (La.App. 4th Cir.), writ denied, 615 So.2d 339 (1993). We agree that LSA-R.S. 23:1201.3(A) is applicable, and, therefore, the hearing officer erred in awarding judicial interest from the date of judicial demand. We amend the judgment to award interest in accordance with LSA-R.S. 23:1201.3(A). Concerning "compensation awarded," such as SEB and permanent total disability benefits due as of the date of the hearing officer's judgment, interest runs from the date of the hearing officer's judgment, June 6, 1994, until the date of satisfaction. Regarding the payments of compensation "directed to be made by order of the hearing officer," which in this case consist of the total permanent disability benefits to be paid weekly after the hearing officer's judgment, interest on these benefits runs from the respective dates the benefits are due ("the date ordered paid by the hearing officer") until the benefits are paid.
The defendants also complain that the hearing officer's award of expert witness fees for Dr. Speeg and Mr. Charrier is excessive. The defendants assert that the plaintiff should have presented their testimony by deposition. Under LSA-R.S. 23:1317(B), "Costs may be awarded by the hearing officer, in his discretion, and when so awarded, the same may be allowed, taxed, and collected as in other civil proceedings. The fees of expert witnesses shall be reasonable...." We do not find that the hearing officer abused her discretion in her award of costs in this case as the plaintiff is not required to present the testimony of witnesses by deposition.
*376 The plaintiff has asked for an increase of attorney's fees on appeal. An increase in attorney's fees is usually warranted on appeal where the defendant appeals and obtains no relief when the appeal has necessitated additional work on the part of the plaintiff's counsel. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736 (La.App. 1st Cir.), writ denied, 553 So.2d 466 (La.1989). While we have amended the judgment in this case based upon two of the defendant's six assignments of error, the attorney's fees were based on the defendants' arbitrary and capricious termination of SEB; the defendants did not prevail on that assignment of error, nor the remaining assignments of error. The amendments to the judgment were minor. Thus, we find an increase in attorney's fees is warranted in the amount of $1500.00.
For the foregoing reasons, the judgment is amended to award the plaintiff supplemental earnings benefits (SEB) from August 27, 1991, until April 14, 1994, in the amount of $1212.60 per month with legal interest from June 6, 1994, the date ordered paid by the hearing officer, until paid and to award the plaintiff permanent total disability benefits from the date of trial, April 14, 1994, in the amount of $282.00 per week. Legal interest is awarded on all permanent total disability benefits which had accrued as of June 6, 1994; the interest on these benefits runs from June 6, 1994 until the date of satisfaction. Legal interest is awarded on permanent total disability benefits due after the hearing officer's judgment from the date each respective payment is due until the date of satisfaction. In all other respects, the judgment is affirmed. The plaintiff is awarded additional attorney's fees from the defendants of $1500.00 for this appeal, with legal interest thereon from the date of this judgment until paid. Costs of this appeal are to be paid by the defendants.
AMENDED, AND AS AMENDED, AFFIRMED.
SHORTESS, J., concurs with reasons.
CARTER, J., concurs in part and dissents in part with reasons.
WHIPPLE, J., concurs in part, and dissents in part, for reasons assigned.
PARRO, J., dissents in part for the reasons assigned by REDMANN, J. Pro Tem.
FITZSIMMONS, J., concurs and assigns reasons.
KUHN, J., concurs and assigns reasons.
REDMANN, J., Pro Tem., dissents in part and assigns reasons.
SHORTESS, Judge, concurring.
Although equitable estoppel or estoppel in pais is not favored under Louisiana law[1] and is to be applied with caution,[2] the application of that doctrine is appropriate under the facts of this case.
The doctrine of equitable estoppel is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence. American Bank & Trust Co. v. Trinity Universal Ins. Co., 251 La. 445, 205 So.2d 35 (1967). If one person is induced to do an act prejudicial to himself in consequence of the acts or declarations of another, on which he had a right to rely, equity will enjoin the latter from asserting his legal rights against the tenor of such acts or declarations. Branson v. Wirth, 84 U.S. 32, 42, 17 Wall. 32, 42, 21 L.Ed. 566, 568 (1873). One will not be permitted to lull another into a sense of security by word or deed and then change his position to the detriment of the one who relied on that word or deed. United States Fidelity & Guar. Co. v. Putfark, 180 La. 893, 158 So. 9, 10 (1934).
The party asserting equitable estoppel must prove three elements: (1) a representation by conduct or word; (2) justifiable reliance; *377 and (3) a change in position to his detriment because of the reliance. Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975); Quality Finance Co. v. Mitchell, 423 So.2d 1262, 1265 (La.App. 1st Cir.1982). Equitable estoppel may be invoked only by one who is in good faith and who has exercised such diligence as would reasonably be expected under the prevailing circumstances to avoid mistake or misunderstanding. Quality Finance, 423 So.2d at 1265-1266.
The representation required for the application of equitable estoppel is usually characterized as a "misrepresentation." That term generally implies intent and suggests deliberate falsification. Black's Law Dictionary 1001 (6th ed. 1990); Webster's Third New International Dictionary Unabridged 1445 (1981). In State ex rel. Porterie v. Gulf, Mobile & Northern R.R. Co., 191 La. 163, 184 So. 711, 716 (1938), the court stated estoppel will be applied when "a person says or does something, or remains silent when he should speak, with the intention of influencing another to act to his hurt." However, a showing of bad faith is not always required. In E.C. Taylor Co. v. New York & Cuba Mail S.S. Co., 159 La. 381, 105 So. 379, 381 (C1925), the Louisiana Supreme Court stated that estoppel applies when one induces another to believe certain facts either intentionally or through culpable negligence.
Generally, a misrepresentation of law does not invoke equitable estoppel. Wadley v. Gleason, 192 La. 1052, 190 So. 127, 129 (1939); American Bank & Trust Co. v. Trinity Universal Ins. Co., 251 La. 445, 205 So.2d 35, 40 (1967); Quality Finance, 423 So.2d at 1266. A party misled by a representation of law may raise equitable estoppel only when the party relying on the representation has a confidential relationship with the representing party or the representing party possesses greatly superior knowledge of the subject. American Bank, 205 So.2d at 40; Quality Finance, 423 So.2d at 1266. One who has means readily and conveniently available to determine whether a representation is true but fails to do so cannot claim the good faith necessary to invoke equitable estoppel. Quality Finance, 423 So.2d at 1266. Conversely, a party who has means readily and conveniently available to determine the facts before making a representation, but who fails to do so, may be culpably negligent so that equitable estoppel may be invoked against him.
Plaintiff has proved all three elements required to invoke equitable estoppel. Plaintiff introduced into evidence a letter from Kim J. Taylor, a senior claim representative with CNA, which states: "I have discussed this matter with my supervisor, and we have agreed that your retirement benefits are something that you have worked for and earned, and your acceptance of them would not in any way alter your workers compensation benefits." This document proves a representation was made to plaintiff that his retirement would not affect his receipt of worker's compensation supplemental earnings benefits. Through his testimony plaintiff proved he retired in reliance on this representation. He further proved this representation was to his detriment because his worker's compensation benefits were terminated when he retired, and his retirement benefits were less than the worker's compensation benefits.
This case involves an incorrect representation of law. Insurance companies and their adjusters customarily have ready access to legal counsel. Taylor's letter indicates she discussed the matter with her supervisor; apparently she failed to consult with legal counsel before making a representation to plaintiff regarding the effect of his acceptance of retirement benefits. In relation to this unrepresented, relatively uneducated claimant, defendant's adjuster possessed a superior knowledge of worker's compensation law. Because the adjuster was in such a dominant position, plaintiff was lulled into believing, much to his detriment, that he could receive retirement benefits and worker's compensation benefits simultaneously. In my opinion, the facts of this case present one of the infrequent occasions in which equitable estoppel may be invoked under a misrepresentation of law.
I respectfully concur.
*378 CARTER, Judge, concurring in part and dissenting in part.
I agree with the majority opinion in all respects, except the majority's interpretation of LSA-R.S. 23:1201.3(A) regarding interest owed on past due and unpaid indemnity benefits.
I dissent from the majority holding that interest runs on past due and unpaid indemnity benefits only from the date of the hearing officer's judgment. For reasons assigned by Judge Whipple in her concurring in part and dissenting in part opinion, I am of the firm opinion that interest on past due worker's compensation benefits is owed from the date each past due indemnity benefit was due until paid regardless of when the hearing officer ultimately issues an order to pay.
As so astutely set forth by Judge Whipple, the majority's resolution of this issue can only reward the late paying employer or insurer at the expense of the injured employee.
WHIPPLE, Judge, concurring in part and dissenting in part.
I concur for the reasons assigned by Judge Shortess. However, I dissent from the majority's holding with regard to the majority's interpretation of LSA-R.S. 23:1201.3(A) regarding interest owed by the defendants.
The majority holds that LSA-R.S. 23:1201.3(A) was enacted to replace the longstanding jurisprudential rule that pre-judgment interest on worker's compensation benefits is owed from the date each past due payment was due, until paid, regardless of when ultimately ordered paid. According to the majority, with regard to past payments owed and unpaid, interest only runs from the date ordered paid by the hearing officer (i.e. the date of the hearing officer's judgment) regardless of when the default in paying the weekly benefit occurred. The majority then reads the statute to provide that, with respect to future benefits owed, each future weekly benefit bears interest from the "respective dates the benefits are due (`the date ordered paid by the hearing officer') until paid ..." While I agree with the majority's holding, with regard to benefits deemed owed in the future, that interest is due from the date each payment is owed after a determination by the hearing officer that a compensable disability exists, I disagree with the majority's holding regarding interest owed on past due or pre-judgment benefits.
LSA-R.S. 23:1201.3(A) was enacted by La. Act No. 938 of 1988 and applies to all accidents occurring after January 1, 1990. The statute provides, in the first sentence of LSA-R.S. 23:1201.3(A), a procedure whereby the hearing officer may order that a certified copy of the award "be filed in the office of the clerk of court of any parish," which award, "whether accumulative or lump sum," shall be "a judicial mortgage as provided in Civil Code article 3321" when "payment of compensation or an installment payment of compensation due under the terms of an award" (except in case of an appeal) "is not made within ten days after the same is due." The second sentence then recites that "[a]ny compensation awarded and all payments thereof directed to be made by order of the hearing officer shall bear interest from the date ordered paid by the hearing officer until the date of satisfaction." (Emphasis supplied). In the instant case, the majority errs in its failure to read these provisions together.
There is nothing in the Act which adopted this recordation scheme to suggest that the legislature intended to favor the recalcitrant employer (or insurer) who fails to pay benefits when due. Indeed, the recordation procedure created by LSA-R.S. 23:1201.3(A) represents a more potentially onerous consequence for the recalcitrant employer, i.e. a statutorily created procedure whereby, upon the employer's subsequent failure to pay an award within ten days, the injured employee can obtain recordation in the mortgage records of the cumulative or lump sum award made by the hearing officer, which then bears judicial interest "until satisfaction."
I find that the statute at issue does not address, and therefore could not have specifically overruled, the longstanding and appropriate jurisprudential rule that interest is owed on each past due, lawfully owed, and unpaid indemnity benefit, from the date due. From my reading of the statute, I find: (1) *379 that LSA-R.S. 1201.3 is not applicable to issues regarding pre-judgment judicial interest and (2) that the last sentence of Subsection A was designed to supplement, upon the filing and recordation of an unpaid judgment (award of compensation), any pre-judgment judicial interest to which the claimant is entitled. To hold otherwise rewards the recalcitrant or late-paying employer or insurer, at the expense of the injured employee, contrary to the underlying public policies of the worker's compensation scheme.
Accordingly, I respectfully dissent.
FITZSIMMONS, Judge, concurring with reasons.
I agree with the interpretation of La.R.S. 23:1201.3(A) by the third and fourth circuits adopted by the majority of this panel. Additionally, I believe that our interpretation of the last sentence of the article does not require an out-of-context reading, as argued by plaintiff. Section A of article 1201.3 deals not only with interest, but also with the inscription of judicial mortgages. The judicial mortgage cannot be inscribed without the filing of a copy of the award by the hearing officer in the mortgage records. The award, id. est, the judgment by the hearing officer ordering payments, is necessary to effectuate either the judicial mortgage or the payment of interest. Under the clear wording of La.R.S. 23:1201.3(A), the date of the judgment by the hearing officer is the date after which both events, the running of interest on past due awards and the inscription of a judicial mortgage, become possible.
As with the payment of past due awards, the original judgment is the keystone regarding the payment of any interest on future awards. Interest shall be due from the "date ordered paid." La.R.S. 23:1201.3(A). Interest on future payments is determined by the original judgment awarding "payments ... to be made"; that is, any interest due to the claimant will commence to run on the date that the future payment is due. Any judgment in the future that seeks to enforce a non-payment of an amount that has been ordered to be paid will not abolish interest due on missed payments; rather, it is the original judgment that establishes the interest due on delinquent or abandoned monthly payments that were "ordered paid."
KUHN, Judge, concurring with additional reasons.
I concur to clarify a point of concern regarding the interest awarded by this court on the total permanent disability benefits to be paid weekly after the date of the hearing officer's judgment. I note interest runs on each payment as it becomes due until payment is made without the need for claimant to rule the defendant-employer back into court to obtain these amounts as they become due.
REDMANN, Judge Pro Tem., dissenting in part.
I disagree with interpreting R.S. 23:1201.3(A)'s "the date ordered paid by the hearing officer" as meaning, as to installments already due when the entitlement to benefits is decided (though not as to those becoming due thereafter), the one date upon which that entitlement is decided. I note that interest on the $282 weekly benefits "ordered paid" by this court does not run from "the date ordered paid by the hearing officer" because the hearing officer did not order them paid.
In my opinion, "the date ordered paid by the hearing officer" should mean the same thing as to both due and undue installments, and should mean not the date of the hearing officer's decision but the date, as to each installment, when (as the hearing officer's decision specifies) it was, or is to become, due. That interpretation is consistent with the historical practice of interest from the dates, fixed by the court, on which each installment was or is to be due; and it is consistent with the title of Acts 1988 No. 938, which enacted § 1201.3(A). See La. Const. art. 3 § 15(A).[1]
*380 Neither the title nor the body of Act 938 indicates a purpose to depart from the historic practice, and certainly the title does not suggest a purpose to deprive injured workers of interest on installments that the employer or insurer has not timely paid (even if in good faith). Today's statutory language is susceptible of interpretation providing the historic result: the hearing officer orders past due installments paid as of the date they were due, and undue installments as of the date they are to become due (and each, both due and undue, bears interest from its own "date [due as found by and therefore] ordered paid by the hearing officer").
NOTES
[1] Judge William V. Redmann, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[1] Wilkinson v. Wilkinson, 323 So.2d 120, 126 (La.1975); Graham Resources, Inc. v. Lexington Ins. Co., 625 So.2d 716, 719 (La.App. 1st Cir. 1993), writ denied, 93-2809 (La. 1/13/94), 631 So.2d 1164.
[2] Sanders v. General American Life Ins. Co., 364 So.2d 1373, 1378 (La.App. 3d Cir.1978).
[1] "Every bill shall contain a brief title indicative of its object." Act 938's title, as pertinent, was: "[T]o create administrative hearing officer positions;... to provide for claims; ... to provide for payment of compensation; to provide penalties...." If the body of an Act with that title contained an express repeal of interest on past-due benefits to injured workers, I would deem it unconstitutional. I deem it equally wrong to find an implied repeal of interest in what is, at best, a provision subject to several interpretations.