676 So.2d 716 (1996)
James Ray JACKSON, Plaintiff-Appellant,
v.
AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, et al., Defendants-Appellees.
No. 95-1359.
Court of Appeal of Louisiana, Third Circuit.
June 12, 1996.
Opinion Granting Limited Rehearing August 27, 1996.
*717 Ralph W. Brewer Jr., Baton Rouge, for James Ray Jackson.
Jeffery Paul Robert, Lafayette, for Travelers Ins. & Gen. Well Service.
Philip E. Roberts, Lafayette, for LIGA.
Before THIBODEAUX, SAUNDERS, WOODARD, DECUIR and AMY, JJ.
THIBODEAUX, Judge.
In this workers' compensation case, James Ray Jackson, appeals a trial court judgment in favor of Louisiana Insurance Guaranty Association (LIGA) which determined that he was permanently partially disabled rather than totally and permanently disabled and awarded LIGA a dollar-for-dollar credit against its liability for Longshore and Harbor Workers' Compensation Act (LHWCA) benefits received by Jackson. LIGA sought reimbursement from two third-party defendants, Travelers Insurance and General Well Services, Inc. (GW). These defendants filed an exception of lack of subject matter jurisdiction which was sustained by the trial court. LIGA appeals this judgment.
For the reasons which follow, we grant the relief requested by both Jackson and LIGA. We reverse and remand in part.

ISSUES
We must determine:
(1) whether the September 1979 injury sustained by Jackson created a permanent partial or permanent total disability under La.R.S. 23:1221 (1979);
(2) whether La.R.S. 22:1386(A) entitles LIGA to receive dollar-for-dollar reductions from or credits against its workers' compensation liability; and,
(3) whether La.R.S. 23:1310.3(E) vests the OWC with original and exclusive jurisdiction over defendant's claim that LIGA and Travelers are bound in solido for workers' compensation benefits due Jackson after April 4, 1991.

FACTS
This claim that arose from a September 24, 1979 accident in which Jackson, while working as a painter/sandblaster for Land & Offshore Services, Inc. (L & O), injured his hip, back, and right leg. Soon after the accident, L & O's workers' compensation carrier, American Mutual Liability Insurance Company (American), voluntarily paid compensation benefits to Jackson under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-950. In addition to receiving LHWCA benefits, Jackson filed a third-party action against Union Oil Company (Union), owners of the fixed production platform upon which Jackson was injured. Jackson eventually settled his claim against Union[1] and, in the meantime, continued to collect LHWCA benefits from American.
On July 25, 1983, American learned of the Jackson-Union compromise and, pursuant to 33 U.S.C. § 933(g), American discontinued Jackson's LHWCA benefits. On October 5, 1983, Jackson responded to American's termination by filing a federal claim for workers' compensation benefits under the LHWCA. That claim was denied. That same day, Jackson also filed a claim for Louisiana workers' compensation benefits in the Fifteenth Judicial District Court of Vermillion Parish.[2]
Jackson's state action is currently before this court for a second adjudication. In a prior decision, we reversed the trial court's grant of American's summary judgment motion, and remanded the cause for further proceedings consistent with our opinion. See Jackson v. American Mut. Liab. Ins. Co., 584 So.2d 348 (La.App. 3 Cir.), writ denied, 589 So.2d 1075 (La.1991).
*718 On March 8, 1989, American was ordered into liquidation. Accordingly, the Louisiana Insurance Guaranty Association (LIGA), American's legal successor under the Insurance Guaranty Association Law, La.R.S. 22:1375-1394, was substituted as party defendant. During discovery, LIGA learned that Jackson sustained lower back injuries in at least two separate work-place accidents occurring after the September, 1979 accident. Jackson reinjured his back on December 26, 1986 while performing oil field roughneck duties for the Energy Drilling Company (EDC). From December 26, 1986 to November 24, 1988, EDC paid Jackson $261.00 in weekly workers' compensation benefits totaling $26,100.00. EDC eventually settled with Jackson for an additional $65,000.00. Jackson again injured his back on April 4, 1991 while performing roughneck duties for General Well Services, Inc. (GW). GW has and continues to pay Jackson $193.33 each week in workers' compensation benefits.

LIGA's Supplemental Answer
On October 7, 1992, LIGA filed a supplemental answer asserting a demand for certain credits against all compensation benefits purportedly due Jackson. Specifically, LIGA sought to reduce its workers' compensation exposure in the amount of:
(1) all sums received by Jackson as wages since September 24, 1979;
(2) all sums received by plaintiff under the Jackson-Union compromise;
(3) all LHWCA benefits paid to Jackson by American totaling $49,392.14;[3]
(4) all compensation benefits & medical expenses paid to Jackson by the Home Insurance Company (Home), EDC's workers' compensation carrier, including the lump sum settlement of $65,000.00 and weekly disability benefits totaling $26,100.00; and,
(5) all compensation & medical benefits paid to Jackson by Travelers Insurance Company (Travelers), GW's workers' compensation carrier, totaling $193.33 per week from April 4, 1991 and thereafter so long as said benefits are paid.

LIGA's Third Party Demand
On October 9, 1992, LIGA filed a third party demand against Travelers and GW. LIGA maintained that the April 4, 1991 accident aggravated and/or reinjured Jackson's lower back and prolonged, increased, and/or aggravated any disability Jackson may have sustained in the September 1979 accident. Therefore, according to LIGA, GW, Travelers, and LIGA were solidarily liable to plaintiff for all workers' compensation benefits due Jackson after April 4, 1991.
Pursuant to La.Code Civ.P. art. 925(6), Travelers and GW filed an exception challenging the district court's subject matter jurisdiction over LIGA's reimbursement claim. They argued that La.R.S. 23:1310.3(E) vests hearing officers from Louisiana's Office of Workers' Compensation (OWC) with original and exclusive jurisdiction over all workers' compensation claims or disputes arising after January 1, 1990. Exceptors reasoned that the operative facts giving rise to LIGA's demand, i.e., Jackson's April 4, 1991 work-place accident, occurred after January 1, 1990; therefore, the district court was without subject matter jurisdiction. The trial court agreed with Travelers/GW and granted the exception. LIGA assigns error to the lower court's ruling.

Jackson's Principal Demand
Jackson's principal demand for state workers' compensation benefits came to trial on July 6, 1995. The trial court first determined that Jackson's disability was permanent partial; therefore, under La.R.S. 23:1221(3) (1979), plaintiff was only entitled to $148.00[4] each week for a maximum of 450 weeks.
Insofar as LIGA's demands for credits against its workers' compensation exposure *719 were concerned, Jackson urged the court to find that LIGA was due no credits at all. LIGA rejoined that it was entitled to a "dollar-for-dollar" credit in the amount of all sums set forth in its supplemental answer. Citing Thompson v. Teledyne Movible Offshore, Inc., 419 So.2d 822 (La.1982), appeal dismissed, 464 U.S. 802, 104 S.Ct. 48, 78 L.Ed.2d 69 (1983), the lower court agreed with LIGA and granted a dollar-for-dollar credit in the amount of all LHWCA benefits paid by Americanviz. $49,392.14, a figure the court observed was equal to 373.73 weeks of compensation benefits. Therefore, the court deduced that Jackson's maximum remaining recovery from LIGA would be 116.27 weeks at $148.00 per week, or $17,207.96. However, the court further held that Home and Travelers were liable in solido with LIGA for workers' compensation benefits due Jackson. Accordingly, all sums paid by Home ($26,100.00 & $65,000.00) and Travelers ($193.33 each week since April 4, 1991) were credited against LIGA's workers' compensation liability.[5] Since both sums clearly exceeded the $17,207.96 balance, LIGA was adjudged to owe Jackson no further workers' compensation benefits. Plaintiff's demand was dismissed and, in his appeal, Jackson insists that the trial court erred in:
(1) finding that he was only partially disabled;
(2) granting LIGA a "dollar-for-dollar" credit for LHWCA benefits paid by American;
(3) granting LIGA credits for workers' compensation benefits paid to Jackson by Travelers and Home Insurance Companies;
(4) failing to recognize that LIGA made its judicial demand for credit on October 7, 1992; and,
(5) failing to find LIGA arbitrary and capricious in refusing to pay LHWCA benefits after July 25, 1983.[6]

LAW & DISCUSSION

Jackson's Disability Is Permanent and Total
The governing law in a compensation action is that which was in effect at the time of the alleged injury. Bruno v. Harbert Intn'l, Inc., 593 So.2d 357 (La.1992). Since we must decide whether Jackson suffered a total or partial disability in his 1979 accident, we must construe La.R.S. 23:1221 (1979), which provided in pertinent part:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, ... sixty-six and two-thirds per centum of wages during the period of such disability.
(3) For injury producing partial disability... sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, ... but not beyond a maximum of four hundred fifty weeks for such partial disability resulting from injury occurring on and after September 1, 1977; provided further that for any week during which the employee is paid any compensation under this subdivision (3) the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this subdivision (3).
LIGA maintains that because Jackson worked on at least two jobs subsequent to his 1979 accident, plaintiff's disability cannot be permanent and total. As a matter of public policy, Jackson implores this court not to penalize totally disabled workers for rejoining the workforce by making subsequent employment *720 per se evidence of a partial disability. We look to the medical evidence.
On February 4, 1980, Jackson visited Dr. James Poche, a Baton Rouge neurosurgeon. Poche performed a myelogram which confirmed that Jackson's injury stemmed from a herniated lumbar disc at L4-5. On February 12, 1980, Poche performed a lumbar laminectomy to excise plaintiff's L4-5 disc. On February 28, 1980, Jackson re-visited Poche complaining that his back pain persisted. With instructions not to engage in heavy lifting, Jackson was discharged from Poche's care on June 6, 1980. Dr. Poche testified thateven after the operationJackson would be "taking a chance" by lifting greater than 30 pound objects.
Because of persistent back pain, counsel advised Jackson to visit Dr. Kenneth Adatto, an orthopaedic surgeon in New Orleans. Adatto prepared three written evaluations, dated February 5, 1981, April 5, 1983, and May 24, 1984, corresponding with visits from plaintiff. In each evaluation, Adatto observed consistently that Jackson suffered from:
(1) limited motion and spasm in his lumbar spine;
(2) narrowing of the L4-5 disc space in the surgery area with mild instability; and,
(3) a 10-15% (approximate) disability of the spine as a whole.
Adatto recommended that Jackson seek employment that did not require him to lift greater than 25-50 pound objects.
During the next several years, Jackson rejoined the labor force and found transient work as a maintenance man, a roofer, and a construction hand. Each job brought considerable pain and swelling to Jackson's back upon stress. On account of a February 1986 roofing accident, Jackson visited Dr. Kavin J. Johnson, an internist, with complaints of lower back pain. During his deposition, Dr. Johnson was asked whether Jackson endured back pain anytime before the roofing accident. Dr. Johnson unequivocally opined that Jackson's chronic back pain persisted "for more than five yearsthe 1986 roofing accident merely aggravated pre-existing pain."
Jackson reinjured his back on December 26, 1986 while working for EDC. Three days following this accident, Jackson visited Dr. Robert T. Van Uden, an orthopaedic surgeon in Natchez, Mississippi, with complaints of lower back and rib cage pain. Dr. Van Uden performed a CT scan which confirmed that Jackson suffered another herniated lumbar disc at L4-5the same injury involved in the 1979 accident. The record reflects that Jackson visited Dr. Van Uden on December 29, 1986, January 5, 1987, and January 9, 1987, and was hospitalized by Dr. Van Uden from January 9, 1987 to January 16, 1987, and again from January 21, 1987 to February 2, 1987. On February 10, 1988, Dr. Poche performed a second lumbar laminectomy. Jackson revisited Dr. Van Uden on February 23, 1988. When asked whether Jackson's 1986 accident increased plaintiff's disability, Dr. Van Uden testified that patients who undergo a second lower back operation, generally, have "a greater number of symptoms" and "somewhat of a greater disability."
Six days after the April 4, 1991 injury plaintiff sustained as a GW employee, Jackson revisited Dr. Van Uden complaining of left hip and leg discomfort. Based upon results obtained from an MRI scan, Dr. Van Uden observed that Jackson suffered a soft tissue defect at L4-5possibly another herniated lumbar disc at the same level of Jackson's initial and subsequent injuries/surgeries. On July 29, 1991, Dr. Van Uden referred Jackson to a Baton Rouge neurosurgeon, Dr. John R. Clifford. From September 9, 1991 to August 16, 1993, Jackson visited Dr. Clifford on eleven different occasions complaining of lower back, leg, and hip pain. Dr. Clifford opined that the results of Jackson's physical examination, 3-D CAT scan, and MRI scan showed no new injury. He had suffered a re-exacerbation of pre-existing back conditions. However, the results of Jackson's myelogram and post myelogram CAT scan suggested a left side disc herniation at L-4, but surgery was contraindicated since, according to Dr. Clifford, "the chances of Jackson getting a good result from a third operation was [sic] marginal at best. I felt that he should try to learn to live with his symptoms." Dr. Clifford observed that Jackson's April 4, 1991 accident probably increased plaintiff's functional disability by *721 several percentage points. Dr. Clifford recommended that Jackson seek light-duty employmentanything that did not involve bending, stooping, or lifting of any substantial weight.
Based upon the foregoing medical testimony, we find error in the trial court's conclusion that Jackson sustained a permanent partial disability in the 1979 accident. An appellate court is not free to reverse a trial court's findings at will. In Lewis v. State, Through Dept. of Transp. & Dev., 94-2730 (La. 04/21/95), 654 So.2d 311, 314, the supreme court set forth the apposite two-tier test for reversal as follows:
(1) the appellate court must find from the record that a reasonable factual basis does not exist for the trial court's findings; and
(2) the appellate court must further determine that the record establishes that the findings are clearly wrong (manifestly erroneous).
"Where two permissible views of the evidence exist, the fact-finder's choice between them is neither manifestly erroneous nor clearly wrong." Stobart v. State, Through Dept. of Transp. & Dev., 617 So.2d 880, 883 (La.1993) (citing Canter v. Koehring Co., 283 So.2d 716 (La.1973)). However, in Ambrose v. New Orleans Police Dept. Amb. Serv., 93-3099 (La. 07/05/94), 639 So.2d 216, 221, the supreme court cautioned:
Notwithstanding the Court's earlier guidance to reviewing courts in Stobart, it was our purpose in that case to mandate that the trial court's factual determinations cannot ever, or hardly ever, be upset. Although deference to the fact-finder should be accorded, the court of appeal and the Louisiana Supreme Court, nonetheless have a constitutional duty to review facts.... Because the court of appeal has a constitutional function to perform, it has every right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support. (citation omitted) (emphasis supplied).
Though we are not free to disturb a trial court's judgment where two reasonable views of the evidence exist, we are constitutionally bound to review the entire record and upset findings that are unsupported by legally sufficient evidence. We conclude that the record does not provide a reasonable factual basis to support the trial court's conclusion that Jackson's September 1979 accident caused plaintiff to suffer a mere partial disability.
In Gilcrease v. J.A. Jones Constr. Co., 425 So.2d 274, 276 (La.App. 3 Cir.1982) (citing Lattin v. Hica Corp., 395 So.2d 690 (La.1981)), this court recognized that a worker who cannot return to any gainful employment without suffering substantial pain is entitled to compensation benefits for total disability. The record is replete with medical testimony reflecting that, after his September 1979 accident, Jackson could not return to any gainful employment without enduring substantial paincommonly localized in Jackson's lower back, left leg, and right hip. Trial courts are not at liberty to disregard substantial, independent, credible, and uncontradicted medical testimony absent a sound reason for so doing. See Syrie v. Schilhab, 94-957 (La.App. 3 Cir. 3/27/96), ___ So.2d ___ [1996 WL 138492]; Johnson v. Insurance Co. of N. Am., 454 So.2d 1113 (La.1984). The unanimous and uncontested medical evidence evinces that the lower court's conclusion is clearly wrong. Accordingly, we determine that Jackson's disability on account of plaintiff's 1979 accident is permanent and total. Because we hold that Jackson's disability is permanent and total, LIGA's liability for workers' compensation benefits is not terminable after 450 weeks; instead, the guarantor must pay $148.00 in weekly workers' compensation benefits during the entire course of Jackson's disability.[7]

La.R.S 22: 1386 Only Entitles LIGA To Reductions For LHWCA Benefit Payments
LIGA insists that it is entitled to receive credits for those portions of Jackson's damages already paid by American, Union, Home, and Travelers. The guarantor's allegations *722 rest upon La.R.S. 22:1386(A), which provides:
Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, and other medical expense coverage. As to the association, any amount payable by such other insurance shall act as a credit against the damages of the claimant, and the association shall not be liable for such portion of the damages of the claimant.[8]
The purpose of La.R.S. 22:1386 is to prevent double recovery. See Hickerson v. Protective Nat'l Ins. Co., 383 So.2d 377 (La.1980). The risk of double recovery arises where LIGA and another insurer are liable to provide "the same type of coverage." Cline v. Pacific Marine Ins. Co., 619 So.2d 1256, 1260 (La.App. 3 Cir.), writ denied, 625 So.2d 1045 (La.1993). In these particular instances, we are likely to grant LIGA's reduction requests under La.R.S. 22:1386(A). See Richard v. Teague, 92-17 (La.App. 3 Cir.), 636 So.2d 1160, writ denied, 94-1934 (La. 11/11/94), 644 So.2d 388.
This case is anomalous because LIGA implores us to expand the scope of its La.R.S. 22:1386(A) reductions by crediting the guarantor for benefits Jackson received for two subsequent accidents, and a separate third-party settlement Jackson confected with Union. We decline defendant's request because LIGA, Travelers, Home and Union are not liable to Jackson for the same type coverage; thus, the double recovery threat does not exist.
Louisiana Revised Statute 22:1386(A) entitles LIGA to reduce its workers' compensation liability (i.e., for disability payments and medical expenses) only to the extent that another carrier has already provided (or is liable to provide) the same benefits for the same accident. Undoubtedly, LIGA is entitled to receive credits for the LHWCA benefits advanced by American because these benefits represent the same lost wages and medical expenses Jackson incurred in the 1979 accident.[9] On the other hand, LIGA is completely ineligible to receive credits for sums advanced under the Jackson-Union compromise because Union provided settlement benefits arising from Jackson's third-party delictual action against Union; therefore, the potential for double recovery cannot exist. The same observation holds true for the benefits advanced by Home and Travelers. Though both carriers provided workers' compensation benefits to Jackson, these monies were linked to two different accidents, two different sets of medical expenses, and wages lost from two different employers.
In Senac v. Sandefer, 418 So.2d 543 (La. 1982), the supreme court held that double recovery does not result where the claimant, who received workers' compensation benefits, is also the recipient of a stipulated judgment for general damages. Likewise, we hold that double recovery does not result where:
(1) the claimant receives benefits on account of subsequent accidents; or,
(2) the claimant settles her/his third-party action.
Succinctly, we hold that the risk of double recovery under La.R.S. 22:1386(A) arises *723 where another carrier pays (or is liable to pay) the same benefits for the same accident. We deny LIGA's demand for credits where the double recovery risk does not exist.
Plaintiff's fourth error assignment is inapposite. Citing Watson v. Amite Milling Co., Inc., 560 So.2d 902 (La.App.1 Cir.), writ denied, 567 So.2d 614 (La.1990) and Holmes v. International Paper, Co., 559 So.2d 970 (La. App. 2 Cir.1990), Jackson contends that LIGA may only receive credits prospectively from the October 7, 1992 date of judicial demand. Jackson's argument rests upon authority concerning reimbursement claims asserted under La.R.S. 23:1225. LIGA seeks reimbursement under La.R.S. 22:1386; accordingly, Jackson's assignment is inapposite.

The District Court Has Subject Matter Jurisdiction Over LIGA's Third Party Demand
The trial court declined to exercise subject matter jurisdiction over LIGA's third-party demand for reimbursement against Travelers on account of the court's construction of La.R.S. 23:1310.3(E), which provides:
Except as otherwise provided by R.S. 23:1101(D) and 1378(E), the hearing officer shall be vested with original, exclusive jurisdiction over all claims or disputes arising out of this Chapter. (Emphasis added).
In Sampson v. Wendy's Management, Inc., 593 So.2d 336, 339 (La.1992), the supreme court construed the foregoing statute and specifically explained its bearing upon the OWC's subject matter jurisdiction, viz.
The claims for which hearing officers are given original exclusive jurisdiction under La.R.S. 23:1310.3 are claims for any compensation or benefits. The Worker's Compensation Act only provides for the administrative agency determination of benefits and penalties directly associated with the employee's work-related injury and her/his receipt of worker's compensation benefits. (Emphasis ours).
In Cajun Bag and Supply v. Baptiste, 94-1218 (La.App. 3 Cir. 3/1/95), 651 So.2d 943, this court concluded that the OWC lacked subject matter jurisdiction over an employer's reimbursement claim against its employee because the employer's action for reimbursement was not a worker's compensation matter, i.e., not a claim for compensation or benefits. In that case, we expressly stated that "La.R.S. 22:1310.3(E) requires that a claim actually arise out of the Worker's Compensation Act, rather than merely relate to worker's compensation in general, for hearing officers to [exercise] original jurisdiction." Id. at 948. The lower court's ruling is further eviscerated by La.R.S. 23:1101(D)(1), which provides:
Any suit to recover amounts paid or obligated to be paid under the provisions of this Chapter or any intervention in an action involving an employee who has or is receiving benefits under this Chapter seeking reimbursement or credit for benefits paid or obligated to be paid under this Chapter shall be tried before a judge only.
The trial court's grant of Travelers' lack of subject matter jurisdiction exception is reversed and remanded for further consideration consistent herewith. Specifically, we remand this cause for the lower court to consider: whether vel non Travelers and LIGA are liable in solido for workers' compensation benefits due Jackson after April 4, 1991 and, if so, what quantum of benefits are due from each, particularly in light of the tremendous changes in Louisiana's workers' compensation laws between 1979 and today.

CONCLUSION
For the foregoing reasons, the trial court's finding that Jackson's disability is permanent partial is reversed as we conclude that such disability on account of plaintiff's September 1979 accident is permanent and total. LIGA is hereby ordered to pay Jackson $148.00 in weekly workers' compensation benefits from July 25, 1983 to April 4, 1991. In this manner, the $49,392.14 paid by American from September 24, 1979 to July 25, 1983 will be properly credited against LIGA's liability. The trial court's judgment on Travelers' and General Wells' exception of lack of subject matter jurisdiction is reversed and remanded for further disposition consistent herewith.
REVERSED & REMANDED IN PART.
DECUIR and AMY, JJ., dissent.

*724 ON REHEARING

PER CURIAM.
James Ray Jackson filed an application for rehearing in which he requests that benefits for permanent and total disability extend beyond April 4, 1991, and that legal interest on each unpaid indemnity installment by LIGA to him be paid from the due date of each unpaid weekly installment until paid. Jackson also requests the imposition of penalties and attorney's fees.
It is well-settled that appellate courts have the power to correct their judgments without the necessity of a rehearing to do so. George v. Marcantel Feed Stores, Inc., 446 So.2d 345 (La.App. 3 Cir.1984).
We grant in part and deny in part the relief requested by James Ray Jackson. In accordance with our holding that Jackson's disability is permanent and total, LIGA is obligated to pay $148.00 in weekly compensation benefits "during the entire course of Jackson's disability" as indicated in the body of the original opinion. This amount is due for as long as Jackson's permanent and total disability continues. Additionally, he is entitled to legal interest from the date that each installment becomes due. Each weekly indemnity installment is to bear legal interest from its respective due date until it is paid. Hickman v. Allstate Timber Company, 94-1275 (La.App. 3 Cir. 4/5/95); 653 So.2d 154.
Jackson's requests for the imposition of penalties and attorney's fees are denied.
Accordingly, the former decree is amended to state that "LIGA is hereby ordered to pay Jackson $148.00 in weekly workers' compensation benefits from July 25, 1983 for the duration of his permanent and total disability. Legal interest is assessed on each weekly indemnity benefit from the date that each installment becomes due until it is paid."
In all other respects, our original decree is affirmed.
DECUIR and AMY, JJ., dissent and would deny the rehearing.
NOTES
[1] By contract dated June 24, 1982, Union agreed to pay Jackson an initial settlement of ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS, as well as periodic future payments totaling THREE HUNDRED TWENTY-FIVE THOUSAND AND NO/100 ($325,000.00) DOLLARS.
[2] Jackson's action arose at a time when Louisiana district courts were vested with original and exclusive jurisdiction over workers' compensation claims.
[3] From September 24, 1979 to April 19, 1983, American paid Jackson LHWCA benefits at a weekly rate of $241.74, and from April 19, 1983 to July 25, 1983 Jackson was paid $137.75 each week. American paid Jackson $57,271.05 in LHWCA benefitsincluding $7,778.91 in medical and vocational rehabilitation expenses, $46,992.14 in temporary partial disability benefits, and $2,500.00 in advances; however, prior to presenting evidence, both parties stipulated that Jackson was paid LHWCA benefits totaling $49,392.14.
[4] At the time of Jackson's accident, the maximum recovery rate was $148.00 under the Louisiana Workers' Compensation Act.
[5] The other two credit items advanced by LIGA (i.e., the Jackson-Union compromise and wages received by Jackson since September 24, 1979) were not addressed at trial and, on appeal, LIGA only raises the Jackson-Union compromise; therefore, LIGA's reimbursement claim for wages has been waived.
[6] Whether vel non LIGA (via American) acted capriciously in terminating LHWCA benefits is clearly a federal question; thus, we refuse to adjudge this matter upon review.
[7] Under La.R.S. 22:1382(A)(1)(c), LIGA is liable for the full amount of any covered claim arising out of a workers' compensation policy.
[8] By Act 1992, No. 237, § 3 (effective June 10, 1992), the legislature expressly proclaimed that "[La.R.S. 22:1386] shall apply to all covered claims, as defined in La.R.S. 22:1379, pending on or arising on or after the effective date of this act." (emphasis supplied). We recognize that "a claim is pending so long as it is subject to judicial scrutiny" Segura v. Frank, 93-1271 (La. 1/14/94), 630 So.2d 714, 727, cert. denied, ___ U.S. ___, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994). Accordingly, LIGA's La.R.S. 1386(A) claim for reductions applies to plaintiff's workers' compensation claim because Jackson's action was pending on June 10, 1992.
[9] Our conclusion comports with prior decision holding that "when an injured worker recovers under both the state and LHWCA compensation schemes, the employer is allowed credit for benefits paid under one plan against those paid under the other." Thompson v. Teledyne Movible Offshore, Inc., 419 So.2d 822, 822 n. 1, 828 (La. 1982), appeal dismissed, 464 U.S. 802, 104 S.Ct. 48, 78 L.Ed.2d 69 (1983); Calbeck v. Travelers Ins. Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962).