702 So.2d 786 (1997)
Annette K. McLAUGHLIN, Plaintiff-Appellee,
v.
HILL CITY OIL COMPANY/JUBILEE EXXON, Defendant-Appellant.
No. 97-577.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1997.
*787 George Arthur Flournoy, Alexandria, for Annette McLaughlin.
Howard Battle Gist, III, Alexandria, for Hill City Oil Company/Jubilee Exxon.
Before YELVERTON, PETERS and PICKETT, JJ.
PETERS, Judge.
Annette K. McLaughlin filed this claim for workers' compensation benefits against her employer, Hill City Oil Company, Inc. d/b/a Jubilee Exxon. After trial, the workers' compensation judge rendered judgment awarding Ms. McLaughlin benefits, medical expenses, penalties, and attorney fees. The employer has appealed this judgment.

DISCUSSION OF THE RECORD
Hill City Oil Company, Inc. (Hill City) is the owner of a convenience store and gas station in Winn Parish, Louisiana, and operates the facility as Jubilee Exxon. On July 22, 1995, Ms. McLaughlin was employed by Hill City as a cashier at Jubilee Exxon. On that day, she suffered a work-related back and shoulder injury. At trial, the parties stipulated to the employment relationship; the facts of the accident; a compensation rate of $119.63 per week; and Hill City's payment of temporary total disability benefits to Ms. McLaughlin at that rate through September 18, 1995. After her benefits were terminated, Ms. McLaughlin brought this action. The issues at trial involved disability, penalties, and attorney fees.
The workers' compensation judge rendered judgment in favor of Ms. McLaughlin, ordering Hill City to pay, among other things, temporary total disability benefits from September 18, 1995 to October 15, 1996, and supplemental earnings benefits thereafter with a zero-base earning capacity; medical bills arising from the treatment of Dr. Baer I. Rambach; a $2,000.00 penalty for the failure to pay medical expenses and a $2,000.00 penalty for cessation of and failure to pay compensation benefits; attorney fees of $7,500.00; and legal interest on the compensation benefits from the due date of each installment and on the unpaid medical bills, penalties, and attorney fees from the date of judicial demand. Hill City appeals.
Immediately after the accident, Ms. McLaughlin was taken by ambulance to a local hospital, where she was x-rayed and released. Two days later, she saw Dr. Ratnam B. Nagalla, her family physician, who practices in Winnfield, Louisiana. According to the medical records filed into evidence, *788 Ms. McLaughlin saw Dr. Nagalla seven more times for her injuries, with the last office visit being on September 7, 1995. On that date, at Dr. Nagalla's instruction, Ms. McLaughlin underwent a CT scan of the lumbar spine at the Winn Parish Hospital. The radiologist report of this test indicated a very minimal posterior bulging of the L4-5 disc, with no significant encroachment resulting therefrom. On August 4, 1995, Dr. Nagalla made an appointment for Ms. McLaughlin with Dr. John P. Sandifer, a Natchitoches, Louisiana orthopedic surgeon, who first saw Ms. McLaughlin on August 8, 1995.
Dr. Sandifer's initial opinion was that Ms. McLaughlin had suffered a lumbar strain and a strain and contusion of the right shoulder. He felt that she was not able to return to employment at that time, but he anticipated a full recovery. He prescribed medication and referred her to physical therapy. Ms. McLaughlin continued to see Dr. Sandifer, and he released her to return to light duty on September 13, 1995. The doctor signed another work release on September 19, 1995. The releases restricted Ms. McLaughlin from performing any work that required repetitive bending, repetitive lifting over twenty pounds, or prolonged standing. On September 19, 1995, Ms. McLaughlin returned to work for two days. At trial, she testified that she did not return on September 21 because she was not able to do her job without substantial pain.
On September 25, 1995, Ms. McLaughlin returned to Dr. Sandifer. In his office notes of that date, Dr. Sandifer stated that Ms. McLaughlin's MRI[1] was essentially normal and that he did "not see any reason from an orthopaedic standpoint that she could not go back to work in a light duty capacity with no repetitive bending and lifting and no prolonged standing." He also stated that he was at a loss to explain Ms. McLaughlin's continued symptoms and suggested to Ms. McLaughlin that she may want to get another opinion. When Ms. McLaughlin returned on October 11, 1995, Dr. Sandifer informed her that he had done everything he could from an orthopedic standpoint and that he was still of the opinion that she could return to light duty with restrictions. Dr. Sandifer did not see Ms. McLaughlin again until June 10, 1996.
On October 23, 1995, Ms. McLaughlin went to the emergency room at Rapides Regional Medical Center in Alexandria, Louisiana, with complaints of lower back and right shoulder pain. Medication and a sling were prescribed, even though the physical examination and X-rays yielded negative results.
On November 2, 1995, Ms. McLaughlin saw Dr. Baer I. Rambach, a Shreveport, Louisiana orthopedic surgeon. Dr. Rambach initially diagnosed her as having sustained myoligamentous and myofascial sprains and strains to the cervical and lumbosacral regions of her spine and a contusion to her right shoulder and rotator cuff mechanism. After examining Ms. McLaughlin, Dr. Rambach concluded that her injuries did not preclude her from returning to light duty. At her next visits on December 4, 1995, and February 15, 1996, Dr. Rambach's opinion did not change regarding Ms. McLaughlin's condition. In February, he was of the opinion that she would benefit from an extensive one-month program of physical therapy.
Ms. McLaughlin remained under the care of Dr. Rambach. At her March 28, 1996 visit, he recommended an MRI to explore the possibility of rotator cuff damage. That MRI was performed at the Rapides Regional Medical Center on July 18, 1996. The test results indicated the possibility of a partial tear of the right rotator cuff, and the radiologist recommended that an arthrogram be performed to confirm or rule out such an injury. The arthrogram was performed at Schumpert Medical Center in Shreveport, Louisiana, on August 22, 1996, and yielded normal results, thereby ruling out the presence of a rotator cuff tear.
On June 10, 1996, Ms. McLaughlin returned to Dr. Sandifer for another opinion at the request of Hill City. After completing his examination, Dr. Sandifer was still of the *789 opinion that Ms. McLaughlin could perform any employment that did not require repetitive overhead lifting, repetitive bending, or lifting of over fifteen pounds. He injected her shoulder with cortisone and again released her for light duty only.
As of October 15, 1996, Dr. Rambach felt that Ms. McLaughlin had probably obtained a state of maximum medical benefit. However, he did not believe that Ms. McLaughlin could return to the type of work she had been doing for Exxon, and he thought she was going to have to seek work of a lighter nature. Ms. McLaughlin remained symptomatic during her treatment with Drs. Nagalla, Sandifer, and Rambach. At the hearing, Ms. McLaughlin testified that she still hurts in her lower back and shoulders.

OPINION

Compensation Benefits
The workers' compensation judge awarded Ms. McLaughlin temporary total disability benefits from September 18, 1995, to October 15, 1996, and supplemental earnings benefits thereafter with a zero-base earning capacity. Hill City contends that the workers' compensation judge erred in awarding Ms. McLaughlin any benefits after September 18, 1995.
La.R.S. 23:1221(1)(c) provides that temporary total disability benefits "shall be awarded only if the employee proves by clear and convincing evidence ... that the employee is physically unable to engage in any employment or self-employment...." (Emphasis added). A workers' compensation judge's findings of fact are subject to the manifest error standard of review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97); 696 So.2d 551.
Dr. Sandifer was of the opinion that Ms. McLaughlin could return to some type of employment at least by September 19, 1995. When he first examined Ms. McLaughlin, Dr. Rambach was also of the opinion that she could do light duty. Given this uncontradicted testimony, we find that Ms. McLaughlin failed to meet her burden of proving by clear and convincing evidence that she was unable to engage in any employment or self-employment after September 18, 1995. Thus, the workers' compensation judge was clearly wrong in finding that Ms. McLaughlin was temporarily totally disabled after September 18, 1995.
We must now consider whether and to what extent Ms. McLaughlin was entitled to supplemental earnings benefits after September 18, 1995. An employee is entitled to supplemental earnings benefits if he sustains an injury that results in his inability to earn wages equal to ninety percent or more of the wages he was earning at the time of the injury. La.R.S. 23:1221(3)(a); Banks, 696 So.2d 551. Initially, the employee bears the burden of proof in this regard by a preponderance of the evidence. Banks, 696 So.2d 551. Once the employee meets this burden of proof, the burden of proof shifts to the employer, who, in order to defeat the employee's claim for supplemental earnings benefits or establish the employee's earning capacity, must prove by a preponderance of the evidence that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. Id.
As of the time of the hearing on the matter, Ms. McLaughlin had not returned to any type of employment since September of 1995, and no physician had released her for anything other than light duty with restrictions. Also, Dr. Rambach assigned Ms. McLaughlin a physical impairment of fifteen percent as applied to her whole body. Kim Patton, the manager of Jubilee Exxon, indicated that Jubilee Exxon had a cashier position available for Ms. McLaughlin. However, Ms. Patton testified that a cashier's job duties included waiting on customers, bagging groceries, sweeping, mopping, wiping counters and windows, making coffee, cleaning the restrooms, and stocking items such as ice and liquor that sometimes required overhead stocking. Dr. Sandifer's September 1995 release did not specify whether the activity, as described by Ms. Patton, was acceptable light duty.
*790 On November 21, 1995, Dr. Sandifer did approve a job description for Ms. McLaughlin, but the list submitted to him did not include all of the duties testified to by Ms. Patton. Additionally, while Dr. Rambach agreed that Ms. McLaughlin could do light duty, he stated in his report of December 4, 1995:
I think this patient could have returned back to work, if there definitely would have been a light duty job for her. After she described the form of light duty that was available there is no way she could do this. She would be unable to mop, sweep, fill ice buckets, etc. In other words she cannot do janitorial types of work.
The workers' compensation judge concluded that Ms. McLaughlin was not able to return to the Jubilee Exxon store and perform the duties required of her. In light of the foregoing evidence, we find that the record supports the workers' compensation judge's conclusion in that regard. While Ms. Patton indicated that she is able to make accommodations for someone like Ms. McLaughlin, she did not testify that Hill City would in fact do so for Ms. McLaughlin or that these accommodations would be sufficient to allow Ms. McLaughlin to work there. We find no manifest error in the workers' compensation judge's conclusion that Ms. McLaughlin established a prima facie case of entitlement to supplemental earnings benefits.
The burden then shifted to Hill City to prove that there are jobs available to Ms. McLaughlin within her physical capabilities and geographic region that would enable her to earn ninety percent or more of her preinjury wages. In Banks, the supreme court stated that an employer may discharge its burden of proving job availability by establishing, at a minimum, (1) the existence of a suitable job within the claimant's physical capabilities and within the claimant's or the employer's community or reasonable geographic region, (2) the amount of wages that an employee with the claimant's experience and training can be expected to earn in that job, and (3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.
We have no difficulty finding that Hill City failed to meet this minimum standard. Hill City's expert in the field of vocational rehabilitation merely suggested jobs for Ms. McLaughlin to pursue and indicated a "very high probability" that certain of these jobs could be secured by "people" due to the nature of the jobs. Although actual job placement is not required, an actual position must be available. Banks, 696 So.2d 551. In the instant case, Hill City offered no evidence to show that an actual position was available for certain jobs identified. Moreover, Hill City did not give Ms. McLaughlin notice of the existence of a job. Further, there is no showing that any such jobs were approved by Ms. McLaughlin's physician. Therefore, the workers' compensation judge was not clearly wrong in finding that Hill City failed to meet its burden of proving job availability.
Thus, we affirm the workers' compensation judge's determination that Ms. McLaughlin is entitled to supplemental earnings benefits. However, in doing so, we reverse the award of temporary total disability benefits and award supplemental earnings benefits from September 19, 1995.

Medical Expenses
The workers' compensation judge ordered Hill City to pay Dr. Rambach's bill. Hill City contends that the workers' compensation judge erred in awarding Ms. McLaughlin these medical expenses because Dr. Rambach was Ms. McLaughlin's second choice of physician in the field of orthopedics and Hill City did not approve treatment by Dr. Rambach.
La.R.S. 23:1121(B) provides:
The employee shall have the right to select one treating physician in any field or specialty. After his initial choice the employee shall obtain prior consent from the employer or his worker's compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
*791 This statute must be read in conjunction with La.R.S. 23:1203(A), which requires the employer to furnish all necessary medical treatment. Lemoine v. Hessmer Nursing Home, 94-836 (La.App. 3 Cir. 3/1/95); 651 So.2d 444. La.R.S. 23:1203 has been interpreted by this court to allow an employee to recover medical expenses incurred for treatment by a physician even though the employee has been examined by another physician in the same field and has not sought approval from the employer to do so. Id. The only requirement is that the treatment be reasonable and necessary to alleviate the claimant's symptoms. Id. The employer is then required to provide for those expenses, with the exception of the initial unauthorized visit. Id.
The workers' compensation judge found that Dr. Rambach's treatment was reasonable and necessary. Even though Dr. Sandifer concluded that he had nothing further to offer Ms. McLaughlin, his office notes reflect continuing complaints of back and shoulder pain by Ms. McLaughlin. Further, Dr. Sandifer was in agreement with Ms. McLaughlin's desire to get another opinion. Ms. McLaughlin presented to Dr. Rambach with complaints of lower back and shoulder pain. Dr. Rambach ultimately prescribed medication and physical therapy for Ms. McLaughlin and recommended an MRI of her right shoulder. During her treatment with Dr. Rambach, Ms. McLaughlin returned to Dr. Sandifer at the request of the insurance company for another opinion. At this time, Dr. Sandifer agreed with Dr. Rambach's recommendation of an MRI and even injected Ms. McLaughlin's shoulder with cortisone.
Under these circumstances, we do not find that the workers' compensation judge was clearly wrong in finding that Dr. Rambach's treatment of Ms. McLaughlin was reasonable and necessary. Additionally, despite our holding in Lemoine to the contrary, the parties stipulated at the beginning of trial that in the event Hill City was cast in judgment for compensation benefits, it would also be responsible for all medical expenses associated with Dr. Rambach's treatment, including the expenses associated with the initial unauthorized visit. Stipulations between the parties are binding on the trial court when they are not in derogation of the law. Bullock v. Graham, 96-0711 (La.11/1/96); 681 So.2d 1248. Therefore, we find no error in the workers' compensation judge's decision to include in the award of medical expenses those expenses associated with the initial unauthorized visit to Dr. Rambach.

Penalties and Attorney Fees
The workers' compensation judge awarded a $2,000.00 penalty for the failure to pay medical benefits and another $2,000.00 penalty for the failure to pay compensation benefits. The workers' compensation judge also awarded $7,500.00 in attorney fees. Hill City contends that the workers' compensation judge erred in awarding any penalties or, in the alternative, erred in awarding two separate penalties. Hill City also contends that the workers' compensation judge erred in awarding attorney fees.
La.R.S. 23:1201(F)(2), added by Acts 1995, No. 1137, § 1, effective June 29, 1995, provides in part:
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
An employee's right to benefits is deemed reasonably controverted if the employer or insurer had a reasonable basis for believing that medical expenses and compensation benefits were not owed to the employee. Landry v. City of New Iberia, 96-783 (La. App. 3 Cir. 2/5/97); 689 So.2d 564. Also, La.R.S. 23:1201.2, amended by Acts 1995, No. 1137, § 1, effective June 29, 1995, provides *792 that any employer or insurer who at any time discontinues payment of claims due, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of reasonable attorney fees for the prosecution and collection of such claims.
Hill City terminated Ms. McLaughlin's compensation benefits on September 19, 1995, the date on which Dr. Sandifer released Ms. McLaughlin to return to light duty with restrictions. That release alone did not provide Hill City with a reasonable basis for believing that supplemental earnings benefits were not owed. This is especially true considering the nature of her normal duties and the restrictions imposed.
Although benefits were terminated in September 1995, we note that Hill City did not present a job description to Dr. Sandifer until November 8, 1995, and the job description presented was somewhat different than that testified to by Ms. Patton.[2] Moreover, by this time, Dr. Rambach had also approved only light duty, and in his report of December 4, 1995, Dr. Rambach stated that there was "no way" Ms. McLaughlin could do the type of work that was available. Specifically, Dr. Rambach stated that Ms. McLaughlin would be unable to do janitorial types of work such as mopping, sweeping, and filling ice buckets. While the job description approved by Dr. Sandifer in November of 1995 included sweeping, mopping, and putting ice in the ice machine, the job description given to him does not appear to fully describe what would be expected of Ms. McLaughlin. Additionally, neither Dr. Sandifer nor Dr. Rambach ever found that Ms. McLaughlin could return to anything other than light duty with no repetitive overhead lifting, repetitive bending, or repetitive lifting of over fifteen or twenty pounds. Dr. Rambach specifically concluded that although Ms. McLaughlin had probably reached maximum medical benefit, she could not return to the type of work she had been doing for Exxon.
In light of the foregoing, we find no manifest error in the workers' compensation judge's conclusion that Hill City did not reasonably controvert Ms. McLaughlin's right to compensation benefits or in his conclusion that Hill City was arbitrary, capricious, or without probable cause in terminating benefits.
Furthermore, at the time Hill City refused to pay for Dr. Rambach's medical expenses, our jurisprudence clearly provided that La. R.S. 23:1121(B) and La.R.S. 23:1203(A) were to be read in conjunction with each other and that an employee was allowed to recover necessary medical expenses incurred for treatment by a physician even though the employee had been examined by another physician in the same field and had not sought approval from the employer to do so. See Lemoine, 651 So.2d 444. In light of the jurisprudence on the issue, Ms. McLaughlin's continuing symptoms, and the lack of medical evidence showing malingering, Hill City did not reasonably controvert Ms. McLaughlin's right to payment of Dr. Rambach's medical expenses after the initial unauthorized visit and was arbitrary, capricious, and without probable cause in failing to pay those expenses.
In LeJeune v. Trend Services, Inc., 96-550 (La.App. 3 Cir. 6/4/97); 699 So.2d 95, we held that under the 1993 version of La.R.S. 23:1201(E), an employee is entitled to one maximum penalty of $2,000.00 for failure to timely pay any and all compensation benefits and one maximum penalty of $2,000.00 for failure to timely pay any and all medical benefits. See also Kendrick v. Bill Liberto Enterprises, 96-979 (La.App. 3 Cir. 6/18/97); 698 So.2d 22. We have no difficulty in concluding that the 1995 amendments to La.R.S. 23:1201 also allow for multiple penalties.
The penalty provision in effect prior to June 29, 1995, read as follows:
E. If, pursuant to this Chapter, any compensation or medical benefits payable without an order is not paid within the *793 time period provided in Subsection B, C, or D of this Section, there shall be added to such unpaid compensation a penalty of an amount equal to twelve percent thereof or a total penalty of not more than fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater.... The total fifty dollar per calendar day penalty provided for in this Subsection shall not exceed two thousand dollars in the aggregate.
La.R.S. 23:1201(E) (emphasis added).
The 1995 amendments continue the distinction between compensation and medical benefits and further state that the $2,000.00 maximum applies to each "claim." Furthermore, the amendments provide that in the event a health care provider prevails in its claim for reimbursement, penalties, and attorney fees, it is limited to only one penalty or attorney fee. La.R.S. 23:1201(F)(4). This limiting language of La.R.S. 23:1201(F)(4) clearly sets forth the legislative intent that in other circumstances more than one penalty is recoverable.
Ms. McLaughlin has neither appealed nor answered the appeal to ask for additional penalties and attorney fees. Therefore, we need not address those issues.

Legal Interest
The workers' compensation judge awarded legal interest on each installment of compensation benefits from the due date of each installment and on medical expenses, penalties, and attorney fees from the date of judicial demand. Hill City contends that the workers' compensation judge erred in its award of judicial interest.
La.R.S. 23:1201.3(A) provides:
If payment of compensation or an installment payment of compensation due under the terms of an award, except in case of appeals from an award, is not made within ten days after the same is due by the employer or insurance carrier liable therefor, the hearing officer may order a certified copy of the award to be filed in the office of the clerk of court of any parish, which award whether accumulative or lump sum, when recorded in the mortgage records, shall be a judicial mortgage as provided in Civil Code Article 3321. Any compensation awarded and all payments thereof directed to be made by order of the hearing officer shall bear judicial interest from the date ordered paid by the hearing officer until the date of satisfaction.

(Emphasis added).
Ms. McLaughlin concedes that legal interest is owed on penalties and attorney fees from the date of judgment. After Ms. McLaughlin filed her appellate brief in this court, the supreme court released Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97); 696 So.2d 1382, in which it held that La.R.S. 23:1201.3(A) does not apply to interest stemming from penalties and attorney fees since penalties and attorney fees are not "compensation" within the meaning of that statute and since penalties and attorney fees are not intended to compensate a claimant and make him whole but to discourage certain behavior on the part of the offending party. Rather, the supreme court looked to the jurisprudence and concluded that legal interest on penalties and attorney fees runs from the date of judgment. Therefore, pursuant to Sharbono, we hold that the workers' compensation judge erred in awarding legal interest from the date of judicial demand, and we amend the judgment to provide for interest on those awards from the date of judgment.
The parties dispute the date on which legal interest begins to run on the compensation benefits and on the medical expenses. Hill City contends that legal interest on these awards begins to run from the date ordered, while Ms. McLaughlin contends that legal interest begins to run on compensation benefits from the due date and on medical expenses from the date of judicial demand. In Sharbono, the defendant had failed to assign as error the workers' compensation judge's award of interest on the compensation benefits from the due date of each benefit until paid, and the supreme court stated that the issue need not be considered by the court at that time. However, the supreme court observed:

*794 Interestingly, however, the jurisprudential rule in worker's compensation cases has been that interest is calculated from the past-due date of each installment until paid. See Brown v. Vacuum Oil Co., 171 La. 707, 132 So. 117 (1930) (worker's compensation interest separately calculated from past-due date of each installment); Jackson v. American Mut. Liab. Ins. Co., 95-1359 (La.App. 3d Cir. 6/12/96), 676 So.2d 716, on reh'g, 676 So.2d 724 (8/27/96) (per curiam), writ denied, 96-2364[sic] (La.12/6/96), 684 So.2d 927; Hammons v. ABB C-E Servs., Inc., 94-2444, pp. 7-8 (La.App. 1st Cir. 10/6/95), 671 So.2d 370, 375 (noting the "jurisprudential rule that pre-judgment interest on worker's compensation benefits is awarded from the dates the payments are due until they are paid"). Similarly, in alimony cases, interest is calculated from the past-due date of each delinquent payment, on the amount of that payment. E.g., Morgan v. Morgan, 452 So.2d 255 (La.App. 5th Cir.1984).
Sharbono, 696 So.2d at 1384 n. 1.
La.R.S. 23:1201.3(A) was added by Acts 1988, No. 938, § 2, effective January 1, 1990. As set forth in the footnote in Sharbono, this appellate court in Jackson v. American Mutual Liability Insurance Co., 95-1359 (La. App. 3 Cir. 6/12/96); 676 So.2d 716, writ denied, 96-2371 (La.12/6/96); 684 So.2d 927, on rehearing, applied the jurisprudential rule that legal interest runs from the due date of each installment of weekly compensation. However, the accident in Jackson occurred prior to the effective date of La.R.S. 23:1201.3. In Crooks v. Town of Ball, 94-466 (La.App. 3 Cir. 11/2/94); 649 So.2d 597, this appellate court concluded that interest mandated under La.R.S. 23:1201.3 runs from the date of judgment. See also Verret v. Cajun Travel, Inc., 94-1432 (La.App. 3 Cir. 4/5/95); 653 So.2d 777. Likewise, a divided en banc panel of the first circuit in Hammons v. ABB C-E Services, Inc., 94-2444 (La.App. 1 Cir. 10/6/95); 671 So.2d 370, citing jurisprudence including Crooks and Verret, held that La. R.S. 23:1201.3(A) replaces the jurisprudential rule that prejudgment interest on workers' compensation benefits is awarded from the date due, and the first circuit awarded interest on past-due compensation from the date of judgment.
In her dissent in Hammons, Judge Whipple stated:
The statute provides, in the first sentence of LSA-R.S. 23:1201.3(A), a procedure whereby the hearing officer may order that a certified copy of the award "be filed in the office of the clerk of court of any parish," which award, "whether accumulative or lump sum," shall be "a judicial mortgage as provided in Civil Code article 3321" when "payment of compensation or an installment payment of compensation due under the terms of an award" (except in case of an appeal) "is not made within ten days after the same is due." The second sentence then recites that "[a]ny compensation awarded and all payments thereof directed to be made by order of the hearing officer shall bear interest from the date ordered paid by the hearing officer until the date of satisfaction." (Emphasis supplied). In the instant case, the majority errs in its failure to read these provisions together.
There is nothing in the Act which adopted this recordation scheme to suggest that the legislature intended to favor the recalcitrant employer (or insurer) who fails to pay benefits when due. Indeed, the recordation procedure created by LSA-R.S. 23:1201.3(A) represents a more potentially onerous consequence for the recalcitrant employer, i.e. a statutorily created procedure whereby, upon the employer's subsequent failure to pay an award within ten days, the injured employee can obtain recordation in the mortgage records of the cumulative or lump sum award made by the hearing officer, which then bears judicial interest "until satisfaction."
I find that the statute at issue does not address, and therefore could not have specifically overruled, the longstanding and appropriate jurisprudential rule that interest is owed on each past due, lawfully owed, and unpaid indemnity benefit, from the date due. From my reading of the statute, I find: (1) that LSA-R.S. 1201.3 is not applicable to issues regarding pre-judgment judicial interest and (2) that the *795 last sentence of Subsection A was designed to supplement, upon the filing and recordation of an unpaid judgment (award of compensation), any pre-judgment judicial interest to which the claimant is entitled. To hold otherwise rewards the recalcitrant or late-paying employer or insurer, at the expense of the injured employee, contrary to the underlying public policies of the worker's compensation scheme.
Hammons, 671 So.2d at 378-79.
Judge Redmann, sitting pro tempore, also dissented on the issue and stated:
In my opinion, "the date ordered paid by the hearing officer" should mean the same thing as to both due and undue installments, and should mean not the date of the hearing officer's decision but the date, as to each installment, when (as the hearing officer's decision specifies) it was, or is to become, due. That interpretation is consistent with the historical practice of interest from the dates, fixed by the court, on which each installment was or is to be due; and it is consistent with the title of Acts 1988 No. 938, which enacted § 1201.3(A). See La. Const. art. 3 § 15(A).
Neither the title nor the body of Act 938 indicates a purpose to depart from the historic practice, and certainly the title does not suggest a purpose to deprive injured workers of interest on installments that the employer or insurer has not timely paid (even if in good faith). Today's statutory language is susceptible of interpretation providing the historic result: the hearing officer orders past due installments paid as of the date they were due, and undue installments as of the date they are to become due (and each, both due and undue, bears interest from its own "date [due as found by and therefore] ordered paid by the hearing officer").
Id. at 379-80 (footnote omitted).
In 14 H. ALSTON JOHNSON, III, LOUISIANA CIVIL LAW TREATISE WORKERS' COMPENSATION LAW AND PRACTICE § 391, at 30 & n. 12 (1996 Pocket Part 3d ed.), the author noted the "strenuous dissents" in Hammons and stated that "the dissenters appear to have the better side of the argument." We agree.
Although the supreme court did not decide the issue of interest concerning compensation benefits and medical expenses in Sharbono, 696 So.2d 1382, its comments in that opinion are instructive. Specifically, the supreme court explained that prejudgment interest, which stems from the damages suffered by the victorious party, is meant to fully compensate the injured party for the use of funds to which he is entitled but does not enjoy because the defendant has maintained control of the funds while the action is pending. Id. In contrast, postjudgment interest is a prospective award which has as its purpose to encourage the prompt payment of amounts awarded in the judgment and to compensate the victorious party for the other party's use of the funds to which the victor was entitled under the judgment. Id. In comparing awards of attorney fees to awards of damages, the court stated:
In other words, in cases ex delicto and ex contractu, "prejudgment interest" is awarded to make an injured party whole by compensating that party for the time-value of money to which that party was entitled from the date set by the legislature, but over which the defendant, in retrospect, had wrongfully continued to exercise dominion and control while the suit was pending.
Not so with awards of attorney's fees, which are "due," if at all, only on the date of judgment....
Because attorney's fee awards depend for their very existence upon a discretionary finding of the trier of fact, any amount of attorney's fees awarded to the victor is "due" only from the date of judgment. Prior to that time, the victor was not entitled to those funds. Because the losing party did not deprive the victor of the use of funds to which the victor was entitled, no prejudgment interest may be calculated on the award of attorney's fees. Rather, postjudgment interest on that amount may be calculated only from the date the debt came into being and thus became due to the date it is paid. To hold otherwise would be to unfairly compensate the victor, *796 and penalize the loser, for a deprivation which never took place.
Id. at 1388-89.
The court explained in footnote number five that this is why the courts have computed prejudgment interest in workers' compensation and alimony cases from the date of each past-due installment on the amount of that installment since no money is "due" until that date. Id.
When the language of a law is susceptible of different meanings, it must be interpreted as having the meaning that conforms best to the law's purpose. La.Civ.Code art. 10. La. R.S. 23:1201.3, entitled "Failure to pay compensation; judgment and execution; interest; revocation or suspension of insurer's license," is designed to aid the employee in the collection of his full compensation award. Specifically, Subsection A provides for legal interest to run from the "date ordered paid." This provision is susceptible to more than one meaning, as is evidenced by the divided court in Hammons. We find that the meaning that best conforms to the law's purpose of aiding the employee in collecting his full compensation award is that the interest on an award of compensation must run from the due date of each installment of benefits. Under this interpretation, the employee, who has given up his right to sue in tort, is fully compensated for the use of funds to which he is entitled during the pendency of the proceedings but does not enjoy because the defendant has maintained control over the funds. To hold otherwise would be to unfairly compensate the defendant and penalize the employee. Further, the amount of an award of interest on compensation would depend in part on the arbitrary factor of when the workers' compensation judge rendered the award and could vary depending on such things as docket backlog and continuances. In our opinion, it would seem inconsistent for the legislature to enact a statute to aid the employee in collecting compensation awarded him yet deprive him of the time-value of the money to which he is entitled.
Thus, we affirm the workers' compensation judge's award of interest on the compensation installments from the due date of each installment. To the extent Crooks and Verret are inconsistent with this opinion, we decline to follow them.
We must now decide whether medical expenses are included within the term "compensation" for purposes of legal interest under La.R.S. 23:1201.3(A). Legal interest is statutory and must be strictly construed. Sharbono, 696 So.2d 1382. This court has previously held in the context of penalties under former La.R.S. 23:1201(E) that "compensation" does not encompass "medical expenses." See Mitchell v. Dixie Roofing & Sheet Metal Co., Inc., 95-288 (La.App. 3 Cir. 10/4/95); 663 So.2d 222. We find the same result is required for purposes of legal interest under La.R.S. 23:1201.3(A). Thus, as in Sharbono, 696 So.2d 1382, we must look to the jurisprudence to determine the date on which interest for medical expenses runs.
In Walker v. Halliburton Services, Inc., 93-722 (La.App. 3 Cir. 3/1/95); 654 So.2d 365, writ denied, 95-1507 (La.9/22/95); 660 So.2d 481, on rehearing, we awarded interest on medical expenses from the date of judicial demand. In Walker, we cited Chisholm v. L.S. Womack, Inc., 424 So.2d 1138 (La.App. 1 Cir.1982), in which the court held that since the medical bills and expenses claimed in that case were due and payable prior to the time that the suit was filed, the appellee was entitled to legal interest thereon from the date of judicial demand. But see Manuel v. River Parish Disposal, Inc., 96-302, 96-303 (La.App. 5 Cir. 10/1/96); 683 So.2d 791 (holding that interest on medical expenses ran from the date of judgment). We hold that interest is to run from the date of judicial demand on those medical expenses due and payable prior to the time suit was filed and that interest is to run from the due date on those medical expenses due and payable after the suit was filed.

DISPOSITION
For the foregoing reasons, we reverse the award of temporary total disability benefits and award supplemental earnings benefits from September 19, 1995 to October 15, 1996. We reverse the award of interest on penalties and attorney fees and order interest on those items to run from the date of judgment. We affirm the judgment in all other *797 respects. We assess costs of this appeal to Hill City.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
NOTES
[1] While Dr. Sandifer referred to an MRI, the record does not contain any evidence of such a test having been administered at that point in Ms. McLaughlin's treatment.
[2] The handwritten job description presented to Dr. Sandifer was as follows: wipe counters and tables; sweep rugs and dust mop floors; wet mop as needed; as liquor delivery arrives, price and stock; front shelves; drain and ice barrels; put ice in the ice machine; and stock cups, lids, condiments, and straws.