L JOAN BERNARD ARMSTRONG, Judge.
This is a workers’ compensation case. The workers’ compensation judge (“WCJ”) awarded penalties due to late payment of medical bills. The WCJ also ordered that the claimant employee be examined by a particular physician as to whether she needed knee surgery and, if the physician recommends surgery, that the employer pay for that surgery. The employer appeals. We affirm in part, reverse in part, and remand.
The claimant employee is Betty Russo. The employer is the Sewerage and Water Board of New Orleans (“S & WB”).
Ms. Russo has an employment-related knee injury. She has had a number of doctor visits, MRI’s etc. in connection with that injury. It is uncontested that the S & WB did not pay some of the medical bills for those doctor visits and procedures within 60 days as is required by statute, La.R.S. 23:1201.E, and, as of the time of trial, they were still unpaid. The WCJ ordered the S & WB to pay the unpaid medical bills. The S & WB does not appeal that part of the WCJ’s judgment.
| ¡¡.The WCJ also awarded Ms. Russo statutory penalties, La. R.S. 1201.F, for the late payment of the medical bills. The S & WB appeals the award of penalties and advances two arguments on appeal.
First, the S & WB argues, based upon La. R.S. 23:1201.F(4), that only a health care provider, and not an employee claimant, may be awarded penalties for late payment of medical bills. We disagree. Subsection F provides:
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers’ compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers’ compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
(3) Except as provided in Paragraph
(4)of this Subsection, any additional compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee.
(4) In the event that the health care provider prevails on a claim for payment of his fee, penalties as provided in this Section and reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the health care provider. This Subsection shall not be construed to provide for recovery of more than one penalty or attorney fee.
h(5) No amount paid as a penalty or attorney fee under this Subsection shall be included in any formula utilized to establish premium rates for workers’ compensation insurance.
Sub-subsection (4) provides that, in the event that there is a successful claim by a health care provider for payment of his *494 fee, then a penalty may be awarded and paid directly to the health care provider. However, sub-subsection (4) does not address the situation, as in the present case, where there is no claim made by the health care provider.
Moreover, sub-subsection (4) does not state that only health care providers can recover a penalty for late payment of the health providers fees. In 1993, an employee claimant for the first time was given the right to recover a penalty for late payment of a health care provider’s fee. Manuel v. River Parish Disposal, Inc., 96-302 (La. App 5 Cir. 10/01/96), 683 so.2d 791, 798. In 1995, for the first time, the health care provider was given the right to recover a penalty for late payment of his fee. Manuel, supra, and, also in 1995, a statutory prohibition on more than one penalty was added. McLaughlin v. Hill City Oil Co./Jubilee Exxon, 97-0577 (La.App. 3 Cir. 10/09/97), 702 So.2d 786, 793, unit denied, (La.02/13/98), 706 So.2d 994. The net result of these statutory amendments is that either the employee claimant or the health care provider, but not both as to the same late payment, may recover a late payment penalty.
We note that sub-subsection (3) begins with the introductory clause: “Except as provided by Paragraph [i.e. sub-subsection] (4) of this Subsection”. However, we do not believe that that clause eliminates in all cases the employee claimant’s | ¿right to recover a penalty for late payment of a health care provider’s fee. This is because sub-subsection(4) begins with the introductory clause: “In the event that the health care provider prevails on a claim for payment of his fee ... ” (emphasis added). If there is no claim by the health care provider, then sub-section (4) is not applicable and so, the exception to the employee claimant’s right to recover a penalty for late medical payments, i.e. the introductory clause to sub-subsection (3), is not implicated. Consequently, if there is no claim by the health care provider so that the health care provider is not seeking a late payment penalty, then the claimant employee may seek the late payment penalty. If there is a claim by the health care provider, so that the health care provider might be awarded a late payment penalty, then the employee claimant may not seek the penalty. In short, only one penalty may be recovered, as per the last section of sub-subsection (4), and the employee claimant may seek that penalty unless the health care provider seeks it.
The S & WB’s second argument as to why a late payment penalty should not have been awarded is that, under La. R.S. 23:1201.F(2), no penalty should be awarded “if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or an insurer had no control”. However, the WCJ found, and the S & WB’s own testimony showed, that the late payment of the medical bills in question resulted from the S & WB’s turning them over to an outside contractor that was in the business of negotiating price reductions with health care providers. The bills were given to the outside company by the S & WB 1 sand, because for some unspecified computer glitch, they were not returned to the S & WB for more than two months. The WCJ found that, because the S & WB decided to turn the medical bills over to the outside company, the late payment was not due to conditions over which the S & WB had no control. We agree and add that, based upon the record, there is no reason apparent that the S & WB could not keep track of the time that the outside company had the bills so that the S & WB could require their return in time to pay them within 60 days. Also, the S & WB could have re *495 tained a photocopy of the bills sent to the outside company or retained the originals and sent photocopies to the outside company.
The S & WB also argues upon appeal that the WCJ’s ordering an examination of Ms. Russo’s knee by a particular physician, and, in ordering the S & WB to pay for knee surgery if recommended by that physician, was clearly wrong-manifestly erroneous. The S & WB argues that the last doctor to examine Mr. Russo’s knee, Dr. French, recommended against surgery and that, by ordering an examination and recommendation by another doctor as to whether surgery should be performed, the WCJ was allowing Ms. Russo to engage in “doctor shopping”. However, the WCJ found Dr. French’s report to be somewhat ambivalent as to possible knee surgery and, therefore, concluded that his report was not sufficiently dispositive. We have studied Dr. French’s report and, while reasonable minds might differ as to the import of that report, the WCJ’s interpretation of it was not clearly wrong-manifestly erroneous.
| ^However, we do agree with the S & WB that the WCJ cannot, on the record as it presently stands, order the S & WB to pay for knee surgery if the doctor who now examines Ms. Russo recommends such surgery. That would be, in effect, delegating the WCJ’s authority to order payment to the doctor. The doctor must examine Ms. Russo, render a report including a recommendation for or against knee surgery, and that report must then be received into evidence along with any other competent evidence relevant to the issue of the necessity for knee surgery. Only then can the WCJ make a decision as to whether to order the S & WB to pay for the knee surgery.
Lastly, the S & WB argues that it was not given sufficiently precise notice as to what was to be the subject matter of the hearing on Ms. Russo’s Motion for Payment of Medical Expenses. However, the record of the hearing contains no objection to proceeding at that time or to the allegedly insufficient notice as to the subject matter of the hearing. Further, the S & WB has pointed to no specific prejudice that it allegedly suffered as a result of the allegedly insufficient notice.
For the foregoing reasons, we affirm the WCJ’s judgment ordering payment of medical bills, awarding penalties for late payment and ordering a medical examination of Ms. Russo’s knee but we reverse the WCJ’s order that, if surgery is recommended by the doctor, that the S & WB must pay for that surgery and we remand for farther proceedings as to the issue of whether the S & WB must pay for any recommended knee surgery.

J¿AFFIRMED IN PART, REVERSED-IN PART, AND REMANDED.